WR-83,141-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/16/2015 11:10:22 AM
Accepted 4/16/2015 11:25:44 AM
ABEL ACOSTA
CLERK

No. _____

In The

# Court of Criminal Appeals

RECEIVED
COURT OF CRIMINAL APPEALS
4/16/2015
ABEL ACOSTA, CLERK

Austin, Texas

*In re*
*Justin Chisum*

Relator

*On Appeal from Cause No. 2015-820,779*
*In the 134th Judicial District Court of Lubbock County, Texas*
*The Honorable William R. Eichman, II, Presiding*

# EMERGENCY PETITION FOR WRIT OF MANDAMUS

Allison Clayton
State Bar No. 24059587
The Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464
(806) 773 – 6889
Fax (888) 688 – 4515
Allison@AllisonClaytonLaw.com

*Attorney for Appellant*

ORAL ARGUMENT REQUESTED

<u>**IDENTITY OF PARTIES AND COUNSEL**</u>

Pursuant to TEX. R. APP. P. 38.1(a), the following is a complete list of the names of the parties and their counsel.

| PARTIES | COUNSEL |
|---------|---------|
| **Justin Chisum**<br>Defendant / Relator | ***Trial and Appellate Counsel***<br>Nicky Boatwright, P.C.<br>1005 Broadway<br>Lubbock, Texas 79401<br><br>Ted Hogan<br>The Law Office of Ted Hogan, P.C.<br>1112 Texas Avenue<br>Lubbock, Texas 79401<br><br>Allison Clayton<br>The Law Office of B. Allison Clayton<br>P.O. Box 64752<br>Lubbock, Texas 79464-4752 |
| **The State of Texas**<br><br>**The Honorable William Eichman, II**<br>Respondent | ***Trial Counsel***<br>Sushine Stanek<br>Assistant District Attorneys<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536<br><br>***Appellate Counsel***<br>Jeffrey S. Ford<br>Assistant District Attorney<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..............................................................i

TABLE OF CONTENTS..................................................................................ii

INDEX OF AUTHORITIES..............................................................................iii

STATEMENT OF THE CASE.............................................................................v

STATEMENT OF JURISDICTION.......................................................................vi

ISSUE PRESENTED......................................................................................vi

STATEMENT OF FACTS..................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................3

ARGUMENT ...............................................................................................4

    I. THE TRIAL COURT FAILED TO PERFORM A MINISTERIAL ACT
    BY DENYING MR. CHISUM'S MOTION TO STAY ................................................4

        A.    No Adequate Remedy Exists to Redress Mr. Chisum's Harm ..........4

        B.    The Trial Court had a Ministerial Duty to Stay the Proceedings......5
            1.   The Texas Legislature Steadfastly Protects Potentially
               Incompetent Defendant's ....................................................6

            2.   The Plain Language of Article 46B.004(d)
               Includes Grand Jury Proceedings.........................................8

            3.   The Trial Court Failed to Follow Statutory Dictate..........................14

    II. A STAY IS REQUIRED TO PROTECT MR. CHISUM'S
    CONSTITUTIONAL RIGHTS .........................................................................15

PRAYER ..................................................................................................17
CERTIFICATES ..........................................................................................18
APPENDICES

# INDEX OF AUTHORITIES

## *Federal Cases*

*Bishop v. United States*,
   350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) ...........................................6, 10

*Drope v. Missouri*,
   420 U.S. 162, 95 S.Ct. 896 , 43 L.Ed.2d 103 (1975) ................................. 6, 7, 16

*Johnson v. Southern Pac. Co.*,
   196 U.S. 1, 25 S.Ct. 158 , 49 L.Ed. 363 (1904) .....................................................9

*Medina v. California*,
   505 U.S. 437, 112 S.Ct. 2572 , 120 L.Ed.2d 353 (1992) .......................................6

*Pate v. Robinson*,
   383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) ................................... 6, 7, 13

*Riggins v. Nevada*,
   504 U.S. 127, 139, 112 S.Ct. 1810, 1817, 118 L.Ed.2d 479 (1992) ....................15

*Rothgery v. Gillespie County, Texas*,
   554 U.S. 191, 128 S.Ct. 2578 , 171 L.Ed.2d 366 (2008) ........................ 13, 15, 17

*United States v. Cook*,
   384 U.S. 257, 86 S.Ct. 1412 , 16 L.Ed.2d 516 (1966) ........................................10

*United States v. Lacher*,
   134 U.S. 624, 10 S.Ct. 625 , 33 L.Ed. 1080 (1890) ...............................................9

*United States v. Winn*,
   3 Sumn. 209, Fed. Cas No. 16,740 .........................................................................9

## *State Cases*

*Alcott v. State*,
   51 S.W.3d 596 (Tex. Crim. App. 2001) .................................................................7

*Carlile v. State*, 451 S.W.2d 511, 512 (Tex. Crim. App. 1970) .............................15

*Easley v. State*, 424 S.W.3d 535, 537 (Tex. Crim. App. 2014)...............................15

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.*,
   996 S.W.2d 864 (Tex. 1999) ..................................................................................9

*Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*,
   159 S.W.3d 645 (Tex. Crim. App. 2005) ..............................................................4

*In re McCann*,
   422 S.W.3d 701 (Tex. Crim. App. 2013) ..............................................................4

*In re Reed*,
   227 S.W.3d 273 (Tex. App.—San Antonio 2007, no pet.) ..................................12

*Montoya v. State*,
   291 S.W.3d 420 (Tex. Crim. App. 2009) ..............................................................8

*State ex rel. Curry v. Gray*,
   726 S.W.2d 125 (Tex. Crim. App. 1987) ..............................................................4

*State ex rel. Rosenthal v. Poe*,
   98 S.W.3d 194 (Tex. Crim. App. 2003) ............................................. 4, 14, 15, 16

*State ex rel. Wade v. Mays*,
   689 S.W.2d 893 (Tex. Crim. App. 1985) ..............................................................4

*Turner v. State*,
   422 S.W.3d 676 (Tex. Crim. App. 2013) ..............................................................6

### Statutes

U.S. Const. amend. V, XIV ......................................................................................5

Tex. Const. art. I, §§ 10, 19......................................................................................5, 6

Tex. Crim. Proc. Code Ann. art. 3.01 ....................................................................10

Tex. Crim. Proc. Code Ann. art. 20.02(a) ........................................................ 11, 12

Tex. Crim. Proc. Code Ann. art. 20.17........................................................... 16, 17

Tex. Crim. Proc. Code Ann. art. 24.4(c) ................................................................ vi

Tex. Crim. Proc. Code Ann. art. 46B.004 ...................................................... passim

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | This is a petition for a writ of mandamus. Relator has been arraigned for capital murder. He seeks a stay of all non-competency-related proceedings against him, including a stay of grand jury proceedings, based on incompetency. |
| *Trial Court/ Respondent* | The Honorable William Eichman, presiding judge of the 364th Judicial District Court of Lubbock County, Texas. |
| *Course of the Proceedings* | On April 13, 2015, Mr. Chisum filed a Motion to Stay Grand Jury Proceedings along with a supporting brief. On April 15, 2015, the court held a hearing on the motion. The court denied the motion from the bench at the conclusion of the hearing. Mr. Chisum then filed an emergency petition for a writ of mandamus and an emergency motion to stay the proceedings with the Court of Appeals for the Seventh District of Texas. That court has not yet ruled on the petition for a writ of mandamus, although it has notified counsel via phone that the motion to stay is denied. The District Attorney for Lubbock County will present the case to the grand jury the morning of April 16, 2015. |

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to Article V, § 5(c) of the Texas Constitution, Article 4.04 of the Texas Code of Criminal Procedure, and Rules 52 and 72.1 of the Texas Rules of Appellate Procedure.

The Court of Criminal Appeals has concurrent, original jurisdiction with a court of appeals over a petition for a writ of mandamus against the judge of a district or county court. TEX. CONST. art. V, §§ 5, 6; *Padilla v. McDaniel*, 122 S.W.3d 805, 806 (Tex. Crim. App. 2003). Traditional practice, however, instructs a petition for a writ of mandamus should be presented first to the court of appeals. *Padilla*, 122 S.W.3d at 803. In this case, Relator has presented the petition for writ of mandamus and the motion to stay to the court of appeals. That court has indicated to counsel it has denied the motion to stay, although it has not yet reduced its order to writing. It has not ruled on the petition for a writ of mandamus.

## ISSUE PRESENTED

Did the trial court fail to perform a ministerial duty and abuse its discretion when it

failed to stay all proceedings, including grand jury proceedings,

in Mr. Chisum's case?

No. _____

In The

# Court of Criminal Appeals

Austin, Texas

*In re*
*Justin Chisum*

Relator

*On Appeal from Cause No. 2015-820,779*
*In the 364th Judicial District Court of Lubbock County, Texas*
*The Honorable William R. Eichman, II, Presiding*

**EMERGENCY PETITION FOR WRIT OF MANDAMUS**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

JUSTIN CHISUM, Appellant in docket number _____, submits this Emergency Petition for Writ of Mandamus in support of his request for the Court to enter an order directing the trial to stay grand jury proceedings in this case.

- 1 -

# STATEMENT OF FACTS

On February 2, 2015, Relator Justin Chisum was arraigned for the murder of his four-year-old daughter. On March 11, 2015, his appointed attorneys filed a Suggestion of Incompetency. (Appendix A). That same day, the trial court entered an Order for Examination Regarding Incompetency. (Appendix B).

On March 23, 2015, the court-appointed psychologist examined Mr. Chisum. (Appendix C). He swore by affidavit dated April 8, 2015,

> Mr. Chisum is no currently competent to proceed in the defense of his case. I do not believe that heh has the sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings.

On April 13, 2015, Mr. Chisum filed a Motion to Stay Grand Jury Proceedings. (Appendix D). The trial court held a hearing on the motion on April 15, 2015. It denied the motion from the bench. After the trial court denied the motion, Mr. Chisum filed with the Court of Appeals for the Seventh District of Texas an Emergency Petition for Writ of Mandamus along with an Emergency Motion for a Stay of Proceedings. On the morning of April 16, 2015, counsel for Mr. Chisum was notified the appellate court had denied the motion to stay. That court has not yet passed on the petition for a writ of mandamus.

The Assistant District Attorney is presenting Mr. Chisum's case to the grand jury on the morning of April 16, 2015.

## SUMMARY OF THE ARGUMENT

The trial court had a ministerial duty under the dictates of article 46B.004(d) of the Texas Code of Criminal Procedure to stay the grand jury proceedings. Because there is nothing to stop the District Attorney from now presenting the case to the grand jury, despite Mr. Chisum's incompetence, Mr. Chisum has no adequate remedy other than to obtain a writ of mandamus from this Court.

Article 46B.004(d) is an "if-then" statute, i.e. if certain evidentiary findings are made, then the trial court "shall" stay all non-competency proceedings in the case. The statute does not allow for the trial court to exercise any discretion. The trial court entered the requisite evidentiary finding. Accordingly, the trial court was then compelled by statute to stay all non-competency-related proceedings, which includes grand jury proceedings. The trial court's failure to enter the statutorily mandated stay was a violation of a ministerial duty.

Moreover, the constitutions of both the United States and Texas guarantee a defendant the right to the assistance of an attorney and to defend himself. It is impossible for an incompetent person to defend himself and to effectively communicate with his attorney. These constitutional imperatives line up with the legislative mandate to stay proceedings. Respondent abused its discretion when it failed to stay proceedings in light of evidence of serious mental incompetency. For these reasons, a writ of mandamus is warranted.

## ARGUMENT

### I. THE TRIAL COURT FAILED TO PERFORM A MINISTERIAL ACT BY DENYING MR. CHISUM'S MOTION TO STAY

Mandamus relief is available only if the relator can demonstrate: (i) he has no other adequate remedy at law; and (ii) under the relevant law and facts, the respondent "clearly abused" his discretion or the act sought to be compelled is "purely ministerial." *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 215 (Tex. Crim. App. 2003). The relief sought under either the abuse of discretion or the ministrerial act provision must be "clear and indisputable" such that its merits are "beyond dispute." *Id.* (quoting *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985)).

> a "ministerial" act is one which is accomplished without the exercise of discretion or judgment. If there is any discretion or judicial determination attendant to the act, it is not ministerial in nature. Nor is a ministerial act implicated if the trial court must weigh conflicting claims or collateral matters which require legal resolution.

*State ex rel. Curry v. Gray*, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).

### A. No Adequate Remedy Exists to Redress Mr. Chisum's Harm

The relator in a petition for a writ of mandamus "can show that no adequate legal remedy exists at law if the remedy is 'so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate.'" *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013) (quoting *Greenwell v.*

*Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005)).

As discussed in greater detail below, the trial court was compelled by statute to stay the grand jury proceedings in this case. The court failed to comply with statute, and the District Attorney intends to proceed with presentment of the case to the grand jury. The only way for Mr. Chisum to have his statutory rights protected is for this Court to now stay the proceedings in his case.

### B. The Trial Court had a Ministerial Duty to Stay the Proceedings

It is axiomatic that the government should not prosecute an incompetent person. This principle, well-accepted centuries before America's creation, is acknowledged in the Due Process Clauses of both the United States and Texas Constitutions. *See* U.S. CONST. AMEND. V, XIV; TEX. CONST. art. I, §§ 10, 19. These Clauses establish the minimum protections afforded to defendants.

The Texas Legislature has gone beyond the bare requirements of the Due Process Clause in protecting the potentially and actually incompetent accused. TEX. CRIM. PROC. CODE ANN. cpt. 46B. One of the ways the Legislature did this is found in Article 46B.004(b), which mandates: "If the court determines there is evidence to support a finding of incompetency, the court . . . *shall* stay *all other proceedings* in the case." TEX. CRIM. PROC. CODE ANN. art. 46B.004(d) (emphasis added). As detailed below, this statute requires once a court makes certain

requisite evidentiary findings it must stop the case from proceeding until the issue of the accused's competence is resolved. Because the trial court, in this case, made the requisite evidentiary findings, the statute directs it to stop all actions not related to Mr. Chisum's competency. This includes any grand jury review of the case.

## 1. The Texas Legislature Steadfastly Protects Potentially Incompetent Defendants

Forcing an incompetent person to stand trial violates due process. This ancient principle is an unquestioned pillar in American's common law heritage. As Blackstone explained, an incompetent person must not face trial, "for how can he make his defence?" WILLIAM BLACKSTONE, 4 COMMENTARIES ON THE LAWS OF ENGLAND 24-25 (19th ed. 1836). In America, this long-accepted principle became rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and in Article 1, sections 10 and 19 of the Texas Constitution. *Medina v. California*, 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992) (citing the Fourteenth Amendment as protecting against trying an incompetent person); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975) (citing the Fifth Amendment as protecting against trying an incompetent person); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966) (citing *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)); *Turner v. State*, 422 S.W.3d 676, 688-89 (Tex. Crim. App. 2013). "It has long been accepted that a person whose mental condition is such

that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 420 U.S. at 171, 195 S.Ct. at 903. "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* at 172, 95 S.Ct. at 904 (citing *Robinson*, 383 U.S. at 385, 86 S.Ct. at 842).

Review of Chapter 46B of the Code of Criminal Procedure reveals the Texas Legislature is especially vigilant when it comes to protecting a potentially incompetent person. For example, article 46B.004(c-1) deals with the triggering mechanism for when a court should order a competency evaluation. In *Pate*, the Supreme Court favorably cited an Illinois statute that "jealously guard[ed]" the due process right to a fair trial in cases with potentially incompetent defendants. 383 U.S. at 395, 86 S.Ct. at 842. The statute required the court to order a competency evaluation where the evidence raised a "bona fide doubt" about the defendant's competency. *Id.*, 86 S.Ct. at 842.

Following *Pate*, the Texas Legislature and the Court of Criminal Appeals adopted the "bona fide doubt" standard. *Alcott v. State*, 51 S.W.3d 596, 599 (Tex. Crim. App. 2001). In 2003, in an apparent attempt to abrogate the bona fide doubt standard and impose an even lower requirement for triggering competency review,

the Legislature created the unique "suggestion" of incompetency. The Court of Criminal Appeals interpreted the suggestion of incompetency as simply an iteration of the bona fide doubt standard. *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009). The next legislative session, the Legislature soundly abrogated the bona fide doubt standard by passing article 46B.004(c-1), which states "the court is not required to have a bona fide doubt about the competency of the defendant." To the extent the Supreme Court and the Court of Criminal Appeals have held or intimated due process requires the presence of a bona fide doubt before a court can inquire into a defendant's competency, the Texas Legislature has clearly written the statute to impose a much lower triggering mechanism. It has gone beyond the bare protections of due process to protect an incompetent person accused of committing a crime.

## 2. The Plain Language of Article 46B.004(d) Includes Grand Jury Proceedings

The Legislature continued in this direction with the very next section, wherein it has mandated "[i]f the court determines there is evidence to support a finding of incompetency, the court . . . *shall* stay *all other proceedings* in the case." TEX. CRIM. PROC. CODE ANN. art. 46B.004(d) (emphasis added). The plain language of this statute mandates the trial court stay all non-competency-related proceedings, which includes grand jury proceedings.

The purpose of analyzing a statute is to determine and give effect to the Legislature's intent. When determining this intent, a reviewing court must first look to the plain meaning of the statue, for "it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). "[P]enal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the legislature." *United States v. Lacher*, 134 U.S. 624, 627, 10 S.Ct. 625, 628, 33 L.Ed. 1080 (1890). As Justice Story said,

> I agree to that rule in its true and sober sense; and that is, that penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. But where the words are general, and include various classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, where the mischief to be redressed by the statute is equally applicable to all of them. . . In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.

*Johnson v. Southern Pac. Co.*, 196 U.S. 1, 18, 25 S.Ct. 158, 162, 49 L.Ed. 363 (1904) (quoting *United States v. Winn*, 3 Sumn. 209, Fed. Cas No. 16,740). This principle has endured for generations. When interpreting a statute, the aim of the

court must always be to give the statute's words their fair meaning in accord with the evidence intent of the legislature. *United States v. Cook*, 384 U.S. 257, 262, 86 S.Ct. 1412, 1514, 16 L.Ed.2d 516 (1966).

The relevant phrase in article 46B.004(d) is "all other proceedings." It is difficult to imagine a broader phrase. However, there is no definition of "all," "other," or "proceedings" in the Code of Criminal Procedure, nor is there any caselaw discussing grand jury proceedings in the context of 46B.004(d). Consequently, the reviewing court must itself analyze the statute. *See* TEX. CODE CRIM. PROC. ANN. art. 3.01. ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language . . .").

"All" is the word with the broadest meaning in the English language. It means "every one." WEBSTER'S COLLEGE DICTIONARY 36 (4th ed. 2000). "Other" is "different or distinct from that or those referred to or implied." *Id.* 1021. Because article 46B.004(d) refers to "all *other* proceedings," the question becomes which proceedings is the article dealing with. By the statute's terms, the court must prohibit any kind of proceeding outside of the category referenced in the statute.

Chapter 46B of the Texas Code of Criminal Procedure governs the issue of an accused person's competency. *See Fredericksburg Care Co. v. Perez*, __ S.W.3d __, 2015 WL 1035343 (Tex. 2015) ("[W]e will try to avoid construing a

statutory provision in isolation from the rest of the statute; we should consider the act as a whole, and not just single phrases, clauses, or sentences."). Article 46B.004 itself deals with the informal inquiry into the accused's incompetency. Article 46B.004(e), immediately following the provision in question, discusses "proceedings under this chapter," which chapter is titled "Incompetency to Stand Trial." The article as a whole governs how to identify and handle incompetent and potentially incompetent defendants. Accordingly, the "other" proceedings referenced in 46B.004(d) are ones that do not deal with the accused's competency.

Finally, a "proceeding" is "a particular action or course of action." WEBSTER'S DICTIONARY 1144 (4th Ed. 2000). In the legal realm, a proceeding is "the form and manner of conducting juridical business before a court or judicial officer . . . *including all possible steps in an action from its commencement to the execution.*" BLACK'S LAW DICTIONARY 1368 (4th ed. 1951). The convening of a grand jury is a course of action that is part of the criminal process. In fact, "grand jury proceedings" is a phrase in common parlance used and understood by both attorneys and laymen alike. When a party seeks to quash or modify a subpoena issued by a grand jury, the cause in both federal and Texas courts bears the caption "In re Grand Jury Proceedings."

Moreover, the Code of Criminal Procedure itself governs "[t]he proceedings of the grand jury . . ." *See* TEX. CRIM. PROC. CODE ANN. art. 20.02(a). "[T]he term

'proceedings' as used in Article 20.02(a) could reasonably be understood as encompassing matters that take place before the grand jury, such as witness testimony and deliberations." Similarly, the Texas Rules of Evidence establish the evidentiary rules are not applicable in "proceedings before grand juries." TEX. R. EVID. 101(d)(1)(B). *In re Reed*, 227 S.W.3d 273, 276 (Tex. App.—San Antonio 2007, no pet.); *Barnhart v. State*, No. 13-08-00511-CR, 2010 WL 3420823, at *11 (Tex. App.—Corpus Christi Aug. 31, 2010, pet. ref'd).

This conclusion aligns with the legal definition of a proceeding, set forth above. Every step in the formation, investigation, and ultimate action of the grand jury comprises the whole of the "grand jury proceeding." It is clear the Texas Legislature, in line with common understanding, considers the grand jury's convening, and all actions following that, to be a "proceeding."

Synthesizing this analysis, the Legislature's intentions are unmistakable. When it said "all other proceedings" it meant every action not related to determination of the accused's competence. Grand jury proceedings do not involve determination of whether the accused is competent to stand trial. Accordingly, the grand jury convening and reviewing a case is a proceeding encompassed in article 46B.004(d)'s "all other proceedings."

The cannon of *expressio unius est exclusio alterius*, whereby the court looks not only at what the statute includes but also what it does not include, is also

instructive. First, the mandates of article 46B.004(d) do not have a defined beginning or end. The article does not say, "if, *after indictment*, the court determines there is evidence to support a finding of incompetency, the court . . . shall stay all other proceedings in the case." No other provision of the article sets a time when concern for the accused's competency can be raised.[1] *See id.* art. 46B.004(a) (stating, without temporal parameters, either party or the trial court may suggest the defendant may be incompetent); *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 194, 128 S.Ct. 2578, 2581, 171 L.Ed.2d 366 (2008) (indicating a person formally accused at the initial appearance is a "defendant"). The issue of the accused's competency can be raised at any time. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966) (holding a trial court must evaluate a defendant's competence whenever the evidence raises concerns about it). Consequently, the trial court is not bound to a certain time or stage in the criminal process *when* it can make its determination regarding whether it should investigate the defendant's competency. Article 46B.004(d) applies at any point in time.

Also, 46B.004(d) does not contain any specific modifiers as to which "proceedings" the trial court must stay. It does not direct the court to stay "criminal proceedings;" "civil proceedings;" "trial proceedings;" or "court

---

[1] It is worth noting, however, article 46B.004 "includes language to encourage early and prompt court review and evaluations of persons who might lack competency to be tried." BRIAN SHANNON & DANIEL BENSON, TEXAS CRIMINAL PROCEDURE AND THE OFFENDER WITH MENTAL ILLNESS: AN ANALYSIS AND GUIDE 52 (4th Ed. 2008).

proceedings." Instead, as discussed above, it broadly includes *all* proceedings not related to the competency determination. With these observations at hand, and stepping back to look at the entirety of article 46B.004(d), the if-then command of the statute becomes clear. If the court makes the necessary evidentiary determination, then it must stay all proceedings not related to the accused's competence. This includes grand jury proceedings.

### 3. *The Trial Court Failed to Follow Statutory Dictate*

As discussed earlier, a ministerial act is one "accomplished without the exercise of discretion or judgment." *Poe*, 98 S.W.3d at 215. "If there is any discretion or judicial determination attendant to the act, it is not ministerial in nature." *Id.*

In the case at bar, article 46B.004(d) is a legislative directive: given the requisite evidentiary findings, the court "shall stay all other proceedings in the case." The Legislature did not leave any room for the trial court to exercise discretion. Once the evidentiary finding was made, the court was compelled to stay the proceedings. There were no additional determinations for the court to make before staying the proceedings. *See id.* The court did not have to weigh conflicting claims or collateral matters requiring legal resolution. *See id.* The court was clearly instructed, in mandatory language, that it was to stay the

proceedings.  It failed to do so.  That failure constituted a violation of a ministerial duty.  *See id.*  Consequently, a writ of mandamus is justified.

## II.  A STAY IS REQUIRED TO PROTECT MR. CHISUM'S CONSTITUTIONAL RIGHTS

Article I, Section 10 of the Texas Constitution secures the right of the accused to be heard "by himself or counsel, or both."  This right "is a right of which an accused can under no circumstances be deprived." *Carlile v. State*, 451 S.W.2d 511, 512 (Tex. Crim. App. 1970).  The Court of Criminal Appeals has "interpreted this provision to provide the 'right to appear by counsel.'" *Easley v. State*, 424 S.W.3d 535, 537 (Tex. Crim. App. 2014).

The United States Supreme Court has held a defendant's right to counsel attaches at the initial appearance proceedings.  *Rothgery v. Gillespie County, Texas*, 554 U.S. at 209, 128 S.Ct. at 2590.  "[B]ringing a defendant before a court for initial appearance signals a sufficient commitment to prosecute and marks the start of adversary judicial proceedings." *Id.*, 128 S.Ct. at 2590.  The Court in *Rothgery* specifically passed on proceedings conducted under article 15.17 of the Texas Code of Criminal Procedure and held the right to counsel attaches at such proceedings. *Id.*, 128 S.Ct. at 2590.

Regardless of when a right to counsel or the right to be heard attaches, the right is of little value if the defendant is incompetent.

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.

*Riggins v. Nevada*, 504 U.S. 127, 139, 112 S.Ct. 1810, 1817, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring in judgment).  An incompetent defendant cannot communicate with counsel.  He

cannot be heard. Though he is physically present, because of his mental condition he "is in reality afforded no opportunity to defend himself." *Drope*, 420 U.S. at 171, 95 S.Ct. at 904.

The reports of at least four doctors, one layperson, and one person familiar with Mr. Chisum all indicate that Mr. Chisum is an incompetent person. (*See* Affidavit of Dr. Morgan (Appendix C, pg. 8); Affidavit of Michael Chisum (Appendix C, pg. 5); Motion Suggesting Incompetence and Request for Examination - Affidavits of Phillip Resnick, M.D; Phillip Davis, Ph.D., Arun Patel, M.D.; and April Carter (Appendix A)). Every court to pass upon his case has reached a similar conclusion. *See State v. Chisum*, No. 2015-820,779, "Order for Examination Regarding Incompetency," (Mar. 11, 2015) (Appendix B); *In the Guardianship of Justin Chisum, An Incapacitated Person*, No. 2015-785,001 (Mar. 9, 2015). Mr. Chisum is severely mentally incapacitated.

Criminal proceedings were initiated against Mr. Chisum on February 2, 2014. Since that time, the State has been able to build its case against Mr. Chisum. Mr. Chisum's defense team, on the other hand, has not been able to similarly conduct a full investigation of Mr. Chisum's version of the facts due to his extremely deteriorated mental state. It has long been common practice for a defendant's attorney to put together a packet setting forth an explanation of the facts of the case for the grand jury's review. *See* Op. Tex. Att'y Gen. No. H-508 (1975) (noting the practice and holding such a practice does not offend any traditional rules of grand jury proceedings). Compilation of such a packet is impossible until Mr. Chisum is returned to competency.

Moreover, at this point, the grand jury, were it allowed to review Mr. Chisum's case, could call Mr. Chisum to testify before it. TEX. CRIM. PROC. CODE ANN. art. 20.17. So far, Mr.

Chisum has been unable to communicate with counsel about the facts of the case. The statute permitting the grand jury to question the accused mandates,

> Prior to any questioning of an accused or suspected person who is subpoenaed to appear before the grand jury, the accused or suspected person . . . shall be given a reasonable opportunity to retain counsel or apply to the court for an appointed attorney and to consult with counsel prior to appearing before the grand jury.

*Id.* 20.17(b). Mr. Chisum "is not currently competent to proceed in the defense of his case." (Affidavit of Dr. Morgan, pg. 1). He lacks "the sufficient present ability to consult with his attorneys with a reasonable degree of rationl understanding, or a rational as well as factual understanding of the proceedings." (*Id.*). Were the grand jury to subpoena him, and assuming Mr. Chisum would be able to communicate with the grand jury, he would not understand the rights he would be waiving in doing so.

The State commenced adversary judicial proceedings against Mr. Chisum on February 2, 2015, at the initial appearance. *See Rothgery*, 244 U.S. at 209, 128 S.Ct. at 2590. Under the Texas Constitution, Mr. Chisum has the right to counsel and the right to be heard. Mr. Chisum, however, cannot assert these rights due to his mental state. By failing to stay the proceedings despite strong evidence of severe incompetence, Respondent abused his discretion. *See Poe*, 98 S.W.3d at 215.

## III. PRAYER

Relator Justin Chisum prays this Court would find that the trial court failed to perform a ministerial duty under the Texas Code of Criminal Procedure and abused its discretion in disregarding Mr. Chisum's federal and state constitutional rights to an attorney and to defend himself when it refused to grant Mr. Chisum's Motion to Stay Grand Jury Proceedings. Accordingly, Mr. Chisum asks the Court

to issue a writ of mandamus directing Respondent to enter an order staying all proceedings, including grand jury proceedings, in this case.

Respectfully submitted,

Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464-4752
Phone No.: (806) 773-6889
Fax No.: (888) 688-4515

By: *Allison Clayton*
Allison Clayton
State Bar No. 49059587
Allison@AllisonClaytonLaw.com

## CERTIFICATE OF SERVICE

I certify that on April 16, 2015, a copy of this brief was served on opposing counsel, Jeffrey S. Ford of the Lubbock County District Attorney's Office and on the trial court, the Honorable William R. Eichman, II, of the 364th District Court of Lubbock County, Texas, via electronic mail.

*Allison Clayton*
Allison Clayton

## CERTIFICATE OF COMPLIANCE

I certify the foregoing Brief on the Merits complies with Rules 9.4(i)(2)(A) and 70.3 of the Texas Rules of Appellate Procedure. The brief, excluding those portions detailed in Rule 9.4(i) of the Texas Rules of Appellate Procedure, is 4141 words long. I have relied upon the word count function of Microsoft Word, which is the computer program used to prepare this document, in making this representation.

*Allison Clayton*
Allison Clayton

# Appendix A

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **BEFORE THE JUSTICE OF THE** |
| | § | **PEACE** |
| | § | |
| **vs.** | § | **PRECINCT ONE OF** |
| | § | |
| **JUSTIN CHISUM** | § | **LUBBOCK COUNTY, TEXAS** |

## MOTION SUGGESTING INCOMPETENCY AND
## REQUEST FOR EXAMINATION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now come Nicky Boatwright and Ted Hogan, Attorneys of record for Defendant, and files this motion suggesting incompetency and request for examination of Justin Chisum, Defendant, with respect to the issue of the competency of Defendant to stand trial herein, and shows as follows:

1.     There is an issue in this cause regarding whether Defendant is competent to stand trial herein, as such term is defined by Article 46B.003 of the Texas Code of Criminal Procedure. Justin Chisum has a ten year history of treatment for mental health disorders in numerous inpatient and outpatient facilities throughout Texas, North Carolina and California. Further, several highly qualified mental health professionals have examined Justin Chisum since his incarceration in the Lubbock County Detention Center, and have strongly recommended evaluation for competency. The affidavits of Phillip Resnick, M.D., Philip Davis, Ph.D. and Arun Patel, M.D. are attached hereto in support as Exhibits "A", "B" and "C" respectively. The affidavit of April Carter, who gives a layperson's perspective is attached as Exhibit "D".

2.     Counsel specifically requests pursuant to Article 46B.021(f) of the Texas Code of Criminal Procedure for Justin Chisum to be examined by Dr. Robert Morgan with regard to the competency of Defendant to stand trial. Dr. Morgan has evaluated hundreds of defendants in the State of Texas and nationally, and is well qualified to effectively and efficiently evaluate Justin Chisum's current level of functioning. A true and correct copy of Dr. Morgan's curriculum vitae is attached as Exhibit "E".

3.     In the event the Court determines that there is evidence to support a finding of

incompetency after submission of Dr. Morgan's report, an incompetency trial is requested as provided by Article 46B of the Texas Code of Criminal Procedure.

Respectfully submitted,

NICKY BOATWRIGHT, P.C.
1005 Broadway
Lubbock, TX 79401
Tel: (806) 747-8002
Fax: (806) 747-8110


THE LAW OFFICE OF TED HOGAN, P.C.
1112 Texas Avenue
Lubbock, TX 79401
Tel: (806) 765-0447
Fax: (806) 763-7925

By:_____
Ted Hogan
State Bar No. 00784284
Attorney for Justin Chisum

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was served by hand delivery on Sunshine Staneck, Assistant District Attorney for Lubbock County, Second Floor, Lubbock County Courthouse, 904 Broadway, Lubbock, TX 79401 on March , 2015.

_____
Ted Hogan

# EXHIBIT
## "A"

## AFFIDAVIT OF PHILLIP J. RESNICK, M.D.

**THE STATE OF OHIO** §
§
**COUNTY OF CUYAHOGA** §

BEFORE ME, THE UNDERSIGNED AUTHORITY appeared Phillip J. Resnick, M.D., 10524 Euclid Avenue #7133, Cleveland, OH 44106, who, after being duly sworn, did depose as follows:

1. My name is Phillip J. Resnick, M.D. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2. I am a physician licenced by the States of Ohio and Pennsylvania. I have specialized in the field of forensic psychiatry for over forty years. A true and correct copy of my current *curriculum vitae* is attached hereto as Exhibit "A". As noted in my curriculum vitae, I have written extensively and taught courses on the subject of child murder by parents. I would estimate that I have personally examined over eighty parents who have taken the lives of their children.

3. I interviewed Justin Chisum in the Lubbock County Detention Center for four and one-half hours on February 13, 2015. I also reviewed the following information related to Justin Chisum:

   A. A video of Justin Chisum's interview by representatives of the Lubbock Police Department on February 2, 2015.

   B. Records from Justin Chisum's overnight evaluation by the Starcare crisis evaluation unit on January 21/January 22, 2015.

   C. Records of evaluation, treatment and services from Starcare, the local mental health authority.

4. While I did not evaluate Justin Chisum specifically for competency to stand trial, I believe based upon my interview and my prior experience that he is not competent at the present time.

5. I have reviewed and am familiar with the Texas Standard for Competency set forth in the Texas Rules of Criminal Procedure, Article 46B.003. I do not believe that Justin Chisum has the sufficient and present ability to consult with his lawyer with a reasonable degree of rational understanding, nor does he have a rational understanding of the current proceedings.

6. Mr. Chisum's schizophrenia interferes with his ability to convey information to his

attorney and causes him to fail to recognize the severity of the potential sentence if convicted of the pending charges.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Phillip J. Resnick, M.D.
March __9__, 2015

SWORN TO AND SUBSCRIBED before me on March __9th__, 2015, by Phillip J. Resnick, M. D.

NOTARIAL SEAL
STATE OF OHIO

KATHY MARTIN-HUGHES
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 8/4/18

_____
Notary Public

CURRICULUM VITAE

Phillip J. Resnick, M.D.


| | |
|---|---|
| Office Address: | University Hospitals of Cleveland<br>Walker Bldg. Room 7133<br>10524 Euclid Ave.<br>Cleveland, Ohio 44106<br>(216) 844-3415<br>fax: (216) 844-1703<br>e-mail: phillip.resnick@case.edu |
| Education: | B.A. Psychology, Case Western Reserve University, Cleveland, Ohio, 1959<br>M.D. Case Western Reserve University, 1963 |
| Post-graduate Training: | Internship, William Beaumont Hospital, El Paso, Texas, 1963-64<br>Psychiatry Residency, University Hospitals of Cleveland, 1966-69 |
| Specialized Education: | Case Western Reserve University School of Law, 1975-77; Criminal Law, Family Law, Torts, Psychiatry and the Law, Evidence |
| Current Academic Appointments: | Case Western Reserve University School of Medicine<br>Professor of Psychiatry<br>Director, Division of Forensic Psychiatry<br>Case Western Reserve University School of Law<br>Adjunct Professor |
| Past Academic Appointments: | Cleveland State University School of Law<br>Adjunct Professor, 1978-79<br>John Carroll University<br>Adjunct Professor, 1978-83 |
| Hospital Affiliations: | University Hospitals of Cleveland, 1969-<br>Cleveland VA Hospital, 1969-1996 |
| Administrative Positions: | Director, Court Psychiatric Clinic of Cuyahoga County (Cleveland) 1976-<br>Director, Fellowship in Forensic Psychiatry, Case Western Reserve University, 1979-<br>Director, Clinical Science Family Care Program, Case Western Reserve University, 1971-76 |
| Consulting Positions: | Ohio Department of Mental Health, 1976-<br>Cuyahoga County Welfare Department, 1979-81<br>Cleveland Police Department, 1978-80<br>Cleveland Psychiatric Institute, 1979-1995<br>Weste rn Reserve Psychiatric Hospital, 1979-1995<br>University of Virginia, 1984<br>University of South Carolina, 1987, 1990<br>Northeast Community Mental Health Center, 1992-94<br>Northcoast Behavioral Healthcare System, 1996- |
| Military Service: | Captain, U.S. Army, Valley Forge Hospital, Phoenixville, PA, 1964-66 |

| Medical Licensure: | Active license in Ohio (35-026834 R) |
| | Active license in Pennsylvania (7846-E) |

Certification:
American Board of Psychiatry and Neurology, 1971
American Board of Forensic Psychiatry, 1979
American Board of Psychiatry and Neurology, Added Qualifications in Forensic Psychiatry, 1994-2004, recertification 2004-2014.

Distinguished Visiting Professorships:
University of South Florida Medical School, 1984
Maine Medical Center, 1985
University of Rochester, 1993
Pennsylvania State University-Hershey, 1996
Wilford Hall Medical Center, San Antonio, 1996
Medical College of Ohio, Toledo, Ohio, 1999
University of California, Davis, 1999, 2008, 2009
St. Elizabeths Hospital, Washington DC, 2001
University of Hawaii, Honolulu, HI, 2004
Mayo Clinic, Rochester, Minn, 2005
St. Louis University, St. Louis, MO, 2008
State University of New York, Syracuse, 2009
University of New Mexico, Albuquerque, NM, 2011.

## Consultation and Testimony in Cases of National Interest

1. Huberty v. McDonalds; consultant to McDonalds in 1984 San Ysidro McDonalds massacre of 21 people.
2. Florida v. William Kennedy Smith; consultant to defense in alleged rape.
3. Wisconsin v. Jeffrey Dahmer; consultant to prosecution in multiple murders.
4. Massachusetts v. John Salvi; testimony for defense in two homicides in abortion clinics.
5. South Carolina v. Susan Smith; consultant to defense in two child murders.
6. Pennsylvania v. John du Pont; testimony for defense in homicide of David Schultz.
7. U.S. v. Timothy McVeigh; consultant to U.S. Attorney in Oklahoma bombing.
8. U.S. v. Terry Nichols; consultant to U.S. Attorney in Oklahoma bombing.
9. U.S. v. Theodore Kaczynski; consultant to U.S. Attorney in Unabomber homicides.
10. Delaware v. Amy Grossberg; consultant to defense in neonaticide.
11. U.S. v. Russell Weston; consultant to defense in Capitol shooting.
12. U.S. v. Vincent Gigante; consultant to defense in New York mob boss, known as "the Chin."
13. Texas v. Andrea Yates; testimony for defense in five child drownings.
14. U.S. v. Robert Courtney; consultant to defense in pharmacist dilution of chemotherapy for profit.
15. California v. Scott Peterson; Consultant to defense in drowning of pregnant Laci Peterson.
16. Ohio v. Charles McCoy; testimony for prosecution in Columbus I-270 sniper.
17. U.S. v. Brian Mitchell; consultant to defense in the kidnaping and

rape of Elizabeth Smart.

18. Florida v. Case Anthony; consultant to defense in charge of child murder.

Honors:

Certificate of Commendation, Ohio Senate, 1984
President's Award, Greater Cleveland Bar Association, 1985
Silver Apple Award, American Academy of Psychiatry and the Law, 1985
Alpha Omega Alpha, Honorary Member, 1988
First Annual Award for Teaching Excellence, University Hospitals Psychiatry Residents, 1988
Cleveland Heights High School Distinguished Hall of Fame, 1990
Seymour Pollack Distinguished Achievement Award, American Academy of Psychiatry and the Law, 1991
Listed in The Best Doctors in America, 1992-present
American Psychiatric Association Award for Outstanding Educational Contributions, 1996
Presidential Commendation for Forensic Psychiatry Review Course, American Academy of Psychiatry and the Law, 1998
Psychiatric Times Teacher of the year, 1999
CWRU Educator's Forum Award for Excellence in Education, 2000
Ohio Forensic Leadership Award, First Annual Award by Ohio Department of Mental Health, 2000
Isaac Ray Award for outstanding contributions to forensic psychiatry and psychiatric aspects of jurisprudence, American Psychiatric Association, 2002
"Pearl of the Year" award for article on suicide in Current Psychiatry, 2002
Golden Apple Award for significant contributions to forensic psychiatry, American Academy of Psychiatry and the Law, 2002
Distinguished Life Fellow, American Psychiatric Association (APA), in recognition of significant contributions to psychiatry, 2003
President's Award for Distinguished Alumni, Case Western Reserve University, 2003
Certificate of Commendation, Mississippi Senate, 2004
Cleveland Medical Hall of Fame; inducted 2004
Margaret Clark Morgan Scholar, Hiram College, 2007
Residents Invitation Award, Columbia University, New York 2007
Brophy Visiting Professor, University of California, Davis, 2009

Memberships and Offices:

American Academy of Psychiatry and the Law, President, 1984-85
American Academy of Psychiatry and the Law, Midwestern Chapter, President 1983-84
Association of Directors of Forensic Psychiatry Fellowships, Founding President, 1986-90
Association of Ohio Forensic Psychiatric Center Directors, President, 1977-78
Council on Accreditation for Fellowships in Forensic Psychiatry, 1986-87, 1992-95
American Psychiatric Association (APA)
    APA Council on Psychiatry and Law, Task Force on the Insanity Defense, 1986-88
    APA Council on Psychiatry and Law, 2007-2008
    APA Committee on Psychiatric Services to Jails and Prisons, 1990-91
    APA Committee on Confidentiality, 1991-96

Group for the Advancement of Psychiatry (GAP), Law and Psychiatry
        Committee, 1985-
Ohio Psychiatric Association (OPA)
OPA Forensic Committee, Chairperson, 1981-83
OPA Legislative Committee, 1982-84
Cleveland Psychiatric Society, Vice-President, 1973
American Psychology-Law Society, 1980-
American Society of Law and Medicine, 1983-84
International Academy of Law and Mental Health, 1986-90

Editorial Positions:

Editor, Manual of Association of Ohio Forensic Psychiatric Center
        Directors, 1979
Muse and Views Column, Newsletter of the American Academy of
        Psychiatry and the Law, 1980-2001
Editor, Newsletter of the American Academy of Psychiatry and the Law,
        1979-83
Editor, Psychiatry and Law Section of the international journal,
        Medicine and Law, 1985-1998
Associate Editor, Legal Aspects of Psychiatric Practice, 1984-85
Editorial Board, International Journal of Offender Therapy and
        Comparative Criminology, 1997-
Editorial Board, Aggression and Violent Behavior, 1996-2011
Editorial Board, Behavioral Sciences and the Law, 1997-
Editorial Board, Journal of Threat Assessment, 1999-
Editorial Board, Psychiatric Times 2001-
Editorial Board, Victim and Offenders 2005-
Editorial Board, Current Psychiatry 2007-
Editorial Board, Personality and Mental Health 2007-2009
Editorial Board, Clinical Handbook of Correctional Psychiatry
Reviewer:  American Journal of Psychiatry, Journal of the American
        Academy of Psychiatry and the Law, Psychological Reports, British
        Journal of Forensic Psychiatry, Biological Psychiatry, Psychiatric
        Times, Southern Medical Journal, Neurology, Journal of Forensic
        Psychiatry, American Psychiatric Press, Schizophrenia Bulletin,
        Current Psychiatry, Journal of Clinical Psychiatry


Teaching Experience:

Courses:  Psychiatry and Criminal Law, Psychiatry and Civil Law, Case
        Western Reserve University, School of Law, 1987-
Psychiatry and Law, Case Western Reserve University, School of Law,
        1976-1986
Law and Psychiatry, Cleveland State University School of Law, 1978-79
Aggression, Psychiatry and the Law, John Carroll University, 1978-83
Co-teacher with Melvin Belli, Psychiatric Expert Witness Course,
        American College of Forensic Psychiatry, Santa Barbara, Ca, 1983
Director, Forensic Psychiatry Review Course sponsored by the American
        Academy of Psychiatry and the Law, 1992-; Lecturer, 1980-91
Lecturer on Psychiatry and the Law, Course in Administrative Psychiatry,
        Wright State University, Dayton, Oh, 1987-89, Tulane, 1992-94, 1996

## Workshops

### The Detection of Malingering

1. American Academy of Psychiatry and the Law Annual Meetings, 1983-85, 1987, 1989, 1993, 1997, 2003, 2009
2. American Psychiatric Association Annual Meetings, 1984-2011
3. Ohio Association of Forensic Centers; Columbus, Ohio, 1982
4. Massachusetts Mental Health Center; Boston, Massachusetts, 1984
5. American Psychological Association, Toronto, Ontario, 1984
6. Clarke Institute of Psychiatry, Toronto, Ontario, August, 1984
7. University of Michigan; Ann Arbor, Michigan, April, 1985
8. Supreme Bench of Baltimore Court Clinic, Maryland, 1985
9. Missouri Dept. of Mental Health, Columbia, Missouri, April, 1986
10. Ohio Psychological Association, Columbus, Ohio, May, 1986
11. St. Elizabeths Hospital; Washington, D.C., September, 1986
12. Ontario Psychiatric Association, Toronto, Ontario, 1987
13. University of Calgary, Calgary, Alberta, Canada, July, 1987
14. St. Vincent Hospital, Staten Island, New York, January, 1988
15. Institute of Law and Psychiatry, Charlottesville, Virginia, 1988
16. Michigan Department of Corrections, Lansing, Michigan, Dec, 1988
17. Central New York Psychiatric Center, Marcy, New York, Jan, 1989
18. National Organization of Forensic Social Work, Cincinnati, 1989
19. Family Court of New York, New York City, September, 1989
20. Washington University, St. Louis, Missouri, January, 1990
21. Defense Research Institute, Boston, Massachusetts, June, 1990
22. Nova University, Hollywood, Florida, April, 1991
23. Ohio Self-Insurers Association, Cincinnati, Ohio, June, 1991
24. U.S. Psychiatric Congress, CME, 1991-1993, 1998, 2000
25. American Academy of Forensic Psychology, San Diego, 1992
26. Ohio Judicial Conference, Columbus, Ohio, September 1992
27. Pennsylvania Dept. of Mental Health, Harrisburg, PA, 1995
28. Specialized Training Services, Chicago, Illinois; Seattle, Washington, 1994; Minneapolis, Minnesota; Dallas, Texas, 1995; Atlanta, Georgia; Houston, Texas 1996; Ft. Lauderdale, Florida; Boston, Mass, 1997; Chicago, Illinois; Seattle, Washington, 1998; Dallas, Texas; Baltimore, Maryland, 1999, San Diego, CA 2000; Austin, TX 2000
29. Arizona State Hospital, Phoenix, Arizona, Sept, 1997
30. Napa State Hospital, Napa, California, March, 1999
31. Patton State Hospital, Rialto, California, April 2000
32. Texas Department of Mental Health, Vernon, TX 2002
33. First International Conference on Symptom Validity. Physical Medicine Research Foundation. Toronto, Ontario, 2002
34. San Diego County Mental Health Board, San Diego, CA, 2003
35. Lorman Education Services, Cleveland, OH 2005
36. Texas Criminal Defense Lawyers, San Antonio, TX, 2008
37. Kerrville State Hospital, Kerrville, TX, 2010
38. American Physician Institute, San Diego, CA 2011.

### The Psychiatric Prediction of Violence

1. Ohio Department of Mental Health, Dayton, Ohio, May 1980
2. Central Ohio Psychiatric Hospital; Columbus, Ohio, May, 1986
3. Nebraska Attorney General's Conference; Lincoln, 1988
4. Oregon State Hospital; Salem, Oregon; March, 1988
5. Missouri Institute of Psychiatry, St. Louis, Missouri, 1990
6. William Hall Institute, Hilton Head, South Carolina, 1990
7. Ohio Department of Mental Health, Columbus, Ohio, August, 1990
8. Missouri Dept. of Mental Health, Columbia, Missouri, April 1991
9. Mahoning County Dept. of Mental Health, Youngstown, Ohio, 1991

10. Connecticut Dept. of Mental Health, Norwich, Connecticut, 1991
11. Ohio Association of Forensic Centers, Columbus, Ohio, June, 1991
12. Medical College of Ohio, Toledo, Ohio, May 1992
13. Ohio Common Pleas Judges Association, Canton, Ohio, May 1992
14. American Academy of Psychiatry and the Law, 1992, 1996
15. U.S. Psychiatric Congress, CME, 1992-94
16. American Psychiatric Association Annual Meeting, 1993-97
17. El Camino Hospital, Mountainview, California, 1993
18. Melbourne University, Melbourne, Australia, 1993
19. Mt. Sinai Hospital, New York City, New York, 1994
20. Society of S. African Psychiatrists, Capetown, South Africa, 1994
21. School of Medicine, Christchurch, New Zealand, 1995
22. Kirby Forensic Hospital, New York, New York 1995
23. Columbia University, New York, New York, 1995
24. University of Pennsylvania, Philadelphia, Pennsylvania, 1995
25. Northwestern University, Chicago, Illinois 1996

## The Insanity Defense
1. American College of Forensic Pathologists, Cleveland, Ohio 1976
2. Ohio Association of Forensic Centers, Columbus, Ohio, 1981
3. Bridgewater State Hospital, Bridgewater, Massachusetts, 1982
4. Perkins Hospital, Jessup, Maryland, 1987
5. Willamette Law School, Salem, Oregon, 1988
6. Delaware Bar Association; Wilmington, Delaware, 1988
7. American Academy of Psychiatry and the Law 1991, 1995, 1999
8. American Psychiatric Association Annual Meetings, 1991-2008
9. Royal Australian College of Psychiatry, Sidney, Australia, 1995
10. Ohio Department of Mental Health, Columbus, Ohio, 1995, 2005
11. Winnebago Mental Health Institute, Oshkosh, Wisconsin, 2002
12. American Academy of Forensic Psychology, Atlanta, Georgia, 2010
13. American Academy of Forensic Psychology, Chicago, Illinois, 2011
14. American Academy of Forensic Psychology, Irvine, CA, 2012

## Risk Assessment for Violence
1. Specialized Training Services, Columbus, OH; San Diego, CA, 1997; Chicago, Illinois; Seattle, Washington, 1998; Dallas, Texas; Baltimore, Maryland, 1999, Atlanta, GA, 2000, San Diego, CA, 2000; San Francisco, CA, 2002; Minneapolis, MN, 2003, Newark, NJ, 2004, Washington DC 2005, Boston, MA 2007; Atlanta, GA, 2008
2. Connecticut Dept. of Mental Health, Bridgeport, Connecticut, 1996
3. Sharpe Hospital, Weston, West Virginia, 1996
4. Solutions Training Institute, Columbus, Indiana, 1996, 1999
5. National Association of Forensic Social Workers, New York, NY, 1997
6. Central New York Psychiatric Center, Utica, New York, 1997
7. Mississippi Dept. of Mental Health, Raymond, Mississippi, 1998
8. American Psychiatric Association Annual Meetings, 1998-2011
9. Ohio Common Pleas Judges Association, Columbus, Ohio, 1998
10. Arkansas Psychiatric Society, Little Rock, Arkansas, 1998
11. Napa State Hospital, Napa, California, 1999
12. Patton State Hospital, Rialto, California, 2000
13. Winnebago Institute, Osh Kosh, Wisconsin, 2000
14. Oklahoma Dept. of Mental Health, Oklahoma City, OK, 2000
15. U.S. Psychiatric Congress, 1998, 2000, 2001, 2005
16. American Academy of Psychiatry and the Law annual meeting, 2001
17. Minnesota Psychiatric Association, St. Paul, Minnesota, 2001
18. Pittsburgh Psychiatric Society, Pittsburgh, PA, 2001
19. Royal Australian College of Psychiatry, Brisbane, Australia, 2002
20. Oklahoma Department of Mental Health, Tulsa, OK, 2002
21. Faces Conferences, Chicago, IL, 2003; Las Vegas, NV, 2003; Seattle,

WA, 2004; Vancouver, B.C., 2004; Las Vegas, 2004
22. Akron Mental Health Association, Akron, OH 2003
23. CME, Scottsdale, AZ, 2003
24. Providence Hospital, Anchorage, AK, 2004
25. U.S. Capitol Police, Washington, D.C., 2004
26. Walsh University, Canton, OH, 2005
27. Criminal Justice Institute, Little Rock, AK, 2005
28. Metropolitan State University, St. Paul, MN, 2005
29. South Dakota Dept. of Mental Health, Yankton, SD, 2006
30. Executive Links, Toronto, ON 2006, Calgary, Alberta, 2010
31. South Texas Veterans Healthcare, San Antonio, TX, 2007
32. Idaho Department of Mental Health, Boise, ID, 2007
33. Executive Links, Calgary, Alberta, 2008
34. Unity Hospital, Rochester, NY, 2008
35. Rutgers University, New Jersey, 2009
36. Suicide Task Force, Wichita, KS, 2009
37. Human Services Educational Council, Springfield, IL, 2009
38. FBI Behavioral Analysis Unit, Stafford, VA, 2010
39. Kankakee College, Kankakee, IL, 2010

The Mental Health Professional as Expert Witness
1. American Psychiatric Association Annual Meetings, 1981-2011
2. American Academy of Psychiatry and the Law Annual Meetings, 1981-84, 1986, 1988, 1990, 1994, 1998, 2004
3. Institute Philippe Pinel; Montreal, Quebec, 1984
4. American Psychological Association, Toronto, Ontario, 1984
5. Winnebago Mental Health Institute, Winnebago, Wisconsin, 1985
6. St. Elizabeths Hospital, Washington, D.C., 1985
7. National Association of Mental Health Centers, Boston, Mass, 1988
8. Kingwood Hospital, Michigan City, Indiana, 1988
9. Vermont Dept. of Corrections, Burlington, Vermont, 1988
10. University of Minnesota; 1988 Lake Buena Vista, Florida; 1989 Costa Mesa, California; 1991 Atlanta, Georgia; Boston, Massachusetts; Dallas, Texas; Chicago, Illinois; 1992 Orlando, FL; Berkley, CA
11. U.S. Psychiatric Congress, CME, 1991-1994
12. American Psychology-Law Society, San Diego, California, 1992
13. Patton State Hospital, San Bernardino, California, 1992
14. Medical Center for Federal Prisoners, Springfield, Missouri, 1992
15. Charter Medical Center, New Orleans, Louisiana, 1993
16. St. Elizabeths Hospital, Washington D.C., 1994
17. Specialized Training Services, Chicago, Illinois, Seattle, Washington, 1994; Minneapolis, Minnesota, Dallas, Texas, 1995
18. Royal Australian College of Psychiatry, Brisbane, Australia, 2002
19. South Dakota Dept. Of Mental Health, Yankton, SD, 2005

How to Give A More Effective Lecture
1. American Academy of Psychiatry and the Law, 1997, 1999, 2002, 2005, 2007
2. American Psychiatric Association, 1999-2002, 2005-2011
3. U.S. Psychiatric Congress, 2000
4. American Academy of Geriatric Psychiatry, 2001
5. Midwest American Academy of Psychiatry and the Law, 2004
6. University of California, Davis, 2009

Child Murder by Parents
1. Specialized Training Services, Las Vegas, NV, 2002, San Diego, CA, 2005
2. FBI Academy, Quantico, VA, 2002
3. University of California, San Francisco, 2002
4. Winnebago Mental Health Institute, Oshkosh, Wisconsin, 2002

5. American Psychiatric Association, 2003-2008
6. Colorado Psychiatric Society, Denver, CO, 2004
7. Pennsylvania Psychiatric Society, Harrisburg, PA, 2005
8. National Council of Juvenile Judges, Cleveland, OH 2005
9. Dallas Children's Advocacy Center, Dallas, TX, 2005
10. California Forensic Mental Health Congress, Seaside, CA, 2007
11. U.S. Psychiatric Congress, Las Vegas, NV, 2011
12. American Academy of Psychiatry and the Law, Boston, MA, 2011

Legal Issues in Mental Health
1. Solutions Training Institute, 1999, 2001, 2003
2. Specialized Training Services, San Diego, CA, 2000, Seattle, Washington, 2003, Los Angeles, CA, 2003, Minneapolis, MN, 2003, Columbus, OH, 2004, Newark, NJ, 2004, Washington D.C., 2005, Boston, MA, 2007, Atlanta, GA, 2008, Chicago, IL 2009, Austin, TX 2011
3. Northern Indiana VA Hospital, Indianapolis, IN, 2002
4. Brattleboro Retreat, Brattleboro, Vermont, 2002, 2008
5. Puerto Rico Psychiatric Association, San Juan, PR, 2003
6. Patton State Hospital, Rialto, CA, 2004
7. Arkansas Mental Health Institute, Hot Springs, AK, 2004
8. Northeast Counseling Service, Nanticoke, PA, 2004
9. Department of Corrections, Albuquerque, NM, 2004
10. University of New Mexico, Albuquerque, NM 2005
11. New Jersey Dept. of Mental Health, Medford, NJ, 2006
12. Execulinks, Calgary, Alberta; Toronto, Ontario, 2007, 2009
13. Execulinks, Saskatoon, Saskatchewan, Winnipeg, Manitoba 2010
14. Colorado Department of Mental Health, Colorado Springs, CO, 2008
15. Human Services Educational Council, Springfield, IL 2008

Report Writing

1. American Academy of Psychiatry and the Law, 1989, 2010
2. Ohio Association of Forensic Center Directors, Columbus, OH 1989
3. S. Dakota Dept. Of Mental Health, Yankton, South Dakota, 2006

Expert Witness in Psychiatric Malpractice Cases
1. Midwest Chapter, American Academy of Psychiatry and the Law, 2004
2. American Academy of Psychiatry and the Law, 2005, 2008

Public Service:

Chairperson, Ohio Psychiatric Association Task Force to Revise Ohio Statutes on Mentally Ill Criminals, 1977
Testimony before the Ohio House of Representatives and Senate Committees on legislation regarding civil commitment, "guilty but mentally ill," insanity, competency, psychiatric aspects of criminal offenders, and the death penalty, 1977-86
Testimony before the National Commission on the Insanity Defense; Senator Birch Bayh, Chairman; Washington, DC, October, 1982
People-to-People Citizen Ambassador Delegate in Mental Health Law to England, France, Switzerland, Sweden, and Hungary, 1983
Task Force on Implementation, American Bar Association's (ABA) Criminal Justice Mental Health Standards, 1985
Task Force on Competence to be Executed, Competence to Confess, and Competence to Refuse an Insanity Plea, ABA's Criminal Justice Mental Health Standards, 1986
Chairperson, Rape Task Force of Cleveland Bar Association, 1981-1988
Educational Advisory Committee, Center for Biomedical Ethics, Case Western Reserve University, 1988-1997

External Reviewer, Clarke Institute, Toronto, Ontario, 1991

Publications:

## Books

1. Rappeport, J.R., Resnick, P.J., et al, The Mental Health Professional and the Legal System, Brunner/Mazel, New York, 1991.

2. Resnick, P.J.: Guest Editor. "Forensic Psychiatry," Psychiatric Clinics of North America; March, 1999.

## Articles

1. Resnick, P.J., "Child Murder By Parents: A Psychiatric Review of Filicide," American Journal of Psychiatry, 126:73-83, 1969.

2. Resnick, P.J., "Murder of the Newborn: A Psychiatric Review of Neonaticide," American Journal of Psychiatry, 126:58-64, 1970.

3. Engel, I., Levine, S., Resnick, P., "The Use of Programmed Patients and Videotapes in Teaching Medical Students to Take a Sexual History," Journal of Medical Education, 5:425-27, 1976.

4. Resnick, P.J., MacDougall, E., "The Use of Medical Students as Preceptors in Freshman Clinical Science," Journal of Medical Education, 51:763-765, 1976.

5. Resnick, P.J., "Psychiatrist in the Criminal Justice System," Case Western Reserve Medical Alumni Bulletin, Vol. XL, No. 2, 1976.

6. Levine, S., Resnick, P., et al, "For Chronic Impotence: Psychotherapy or Sex Therapy?" Roche Report Frontiers of Psychiatry, Vol. 7, No. 17, November, 1977, and No. 18, December, 1977.

7. Levine, S., Resnick, P., et al, "Sexuality Curriculum for Gynecology Residents: An Experiment with Videotape Interviews" Journal of Medical Education, 53:510-512, 1978.

8. Resnick, P.J., "Insanity as a Criminal Defense in Ohio," Ohio Psychiatric Association Newsletter, Vol. 5, No. 12, 1978.

9. Resnick, P.J., "The Court Psychiatric Clinic," Annual Report of the Cleveland Municipal Court, 1978.

10. Resnick, P.J., "The Political Offender: Forensic Psychiatric Considerations," Bulletin of the American Academy of Psychiatry and the Law, 6:388-397, 1979.

11. Resnick, P.J., Wile, M., "Support Groups for Medical Students in Initial Clerkships," The Ohio State Medical Journal, 79:17-19, 1979.

12. Resnick, P.J., "The Psychiatrist as an Expert Witness in Ohio," Ohio Psychiatric Association Newsletter, Volume 6, No. 10, 1980.

13. Resnick, P.J., "A Psychiatrist's View of the Insanity Defense," Cleveland Plain Dealer Sunday Magazine, October 12, 1980,

30. Resnick, P.J., "Perceptions of Psychiatric Testimony: A Historical Perspective on the Hysterical Invective," <u>Bulletin of the American Academy of Psychiatry and the Law</u>. 14:203-219, 1986.

31. Modlin, H., Resnick, P.J., La Fond, J., "An American Perspective on Forensic Psychiatry and Mental Health Law in Europe," <u>Medicine and Law</u>. 5:309-321, 1986.

32. Resnick, P.J., "Should a psychiatrist retained by the state for a criminal responsibility evaluation discuss his findings with the defense attorney prior to trial?" Ask the Experts. <u>Newsletter of the American Academy of Psychiatry and the Law</u> 11:24, 1986.

33. Perr, I., Gutheil, T., Mills, M., Resnick, P., Bloom, J., Ciccone, J., Smith, S. "Risk Factors in Psychiatric Management." <u>Legal Aspects of Contemporary Psychiatric Issues</u>, July, 1986.

34. Perr, I., Bloom, J., Ciccone, R., Smith, S., Resnick, P., Gutheil, T., Mills, M., "Civil and Criminal Competency," <u>Legal Aspects of Contemporary Psychiatric Issues</u>, July, 1986.

35. Perr, I., Resnick, P., Smith, S., Gutheil, T., Mills, M., Bloom, J., Ciccone, R., "Evaluating Injury and Disability," <u>Legal Aspects of Contemporary Psychiatric Issues</u>, July, 1986.

36. Daniel, A.E., Resnick, P.J., "Mutism, Malingering, and Competency to Stand Trial," <u>Bulletin of the American Academy of Psychiatry and the Law</u>, 15:301-308, 1987.

37. Rogers, R., Resnick, P.J., "Malingering and Deception: The Clinical Interview." <u>Practioners' Manual</u>, Guilford Publications, 1988.

38. Rosman, J.P., Resnick, P.J., "Sexual Attraction to Corpses: A Psychiatric Review of Necrophilia," <u>Bulletin of the American Academy of Psychiatry and the Law</u>; 17(2), 1989.

39. Resnick, P.J., "Competence for Capital Punishment." <u>Newsletter of the American Academy of Psychiatry and the Law</u>. 13(3), 1988.

40. Resnick, P.J., Malingering versus Factitious Disorder. Ask the Experts. <u>Newsletter of the American Academy of Psychiatry and the Law</u>. 14(1):12, 1989.

41. Grant, W.H., Resnick, P.J., "Right of Active Duty Military Personnel to Refuse Psychiatric Treatment," <u>Behavioral Sciences & the Law</u>, 7:339-354, 1989.

42. Resnick, P.J., "Malingered Hallucinations and Duty to Protect," Ask the Experts, <u>Newsletter of the American Academy of Psychiatry and the Law</u>; 16(2):47, 1991.

43. Yutzy, S.H., Wolfson, J.K., and Resnick, P.J., "Child Stealing by Cesarean Section: A Psychiatric Case Report and Review of the Child Stealing Literature" <u>Journal of Forensic Sciences</u>; 38:192-196, 1993.

44. Resnick, P.J., "Can Psychiatrists Predict Violence?" <u>Harvard Mental</u>

Health Letter, 9(12):8, 1993.

45.  Resnick, P.J., "The Psychiatrist as Expert Witness," Directions in Psychiatry; Psychiatric Malpractice Risk Management III, Lesson 7; pp. 1-11, 1993.

46.  Resnick, P.J., "Defrocking the Fraud: The Detection of Malingering," Israel Journal of Psychiatry, 30:93-101, 1993.

47.  Haynes, R.M., Resnick, P.J., Dougherty, K.C. and Althof, S.E.: Proverb Familiarity and the Mental Status Examination, Bulletin of the Menninger Clinic, 57:523-528, 1993.

48.  Resnick, P.J., "Malingering," Journal of Forensic Psychiatry, Editorial, 5:1-4, 1994.

49.  Resnick, P.J., Kausch, O., "Violence in the Workplace: Role of the Consultant," Consulting Psychology Journal: Practice and Research, 47:213-222, 1995.

50.  Rosenberg, J.E., Resnick, P.J., "Post-Concussive Syndrome," Directions in Psychiatry, New York: Hatherleigh Press, 1996.

51.  Kausch, O. and Resnick, P.J., "Psychiatric Risk Management in Workplace Violence," Directions in Psychiatry - Risk Management Series, 1997.

52.  Resnick, P. and Scott, C., "Legal Issues in Treating Perpetrators and Victims of Violence," Psychiatric Clinics of North America, 20:473-487, 1997.

53.  Resnick, P.J., "Malingering of Posttraumatic Disorders," J. Pract Psychiatry and Behavioral Health; 4:329-339, 1998.

54.  Resnick, P.J., Book Review of "Patients Who Deceive" by Loren Pankratz; Psychiatric Services, 50:273, 1999.

55.  Resnick, P.J., "The Detection of Malingered Psychosis," Psychiatric Clinics of North America, 22:159-172, 1999.

56.  Noffsinger, S.G., Resnick, P.J., "Violence and Mental Illness, Current Opinion in Psychiatry, 12:683-687, 1999.

57.  Knoll, J.L., Resnick, P.J., "U.S. v. Greer: Longer Sentences for Malingerers," Journal of the American Academy of Psychiatry and the Law, 27: 621-625, 1999.

58.  Noffsinger, S.G., Resnick, P.J., "Insanity Defense Evaluations," Directions in Psychiatry, 19:325-338, 1999.

59.  Resnick, P.J., Knoll, J.L., "The Psychiatric Expert Witness," Israel Journal of Psychiatry, 37:145-153, 2000.

61.  Noffsinger, S.G., Zuchowski, S.J., and Resnick, P.J.: "Steele v. Hamilton County Community Mental Health Board," The Journal of the American Academy of Psychiatry and the Law, 29:100-3, 2001.

62.  Kausch, O. and Resnick, P.J.: "Assessment of Employees for Workplace

Violence," <u>Journal of Forensic Psychology Practice</u>, 1:1-22, 2001.

63.  Hrouda, D.R., Resnick, P.J., Aronoff, M., Caso, M., Freidman, L., Noffsinger, S., Buckley, P.F.: Violence and Schizophrenia: Initial Observations on Standards of Care," <u>Schizophrenia Research</u>, 49:33, 2001.

64.  Resnick, P.J., "Recognizing that the Suicidal Patient Views You as an 'Adversary,'" <u>Current Psychiatry</u>, 1:8, 2002.

65.  Kausch, O. and Resnick, P.: "Risk Assessment for Violence: A Clinical Approach," <u>Directions in Psychiatry</u>, 23:55-63, 2003.

66.  Harris, M.R. and Resnick, P.J.: "Suspected Malingering: Guidelines for Clinicians," <u>Psychiatric Times</u>, p. 68-71, December, 2003.

67.  Buckley, P.F., Hrouda, D.R., Friedman, L., Noffsinger, S.G., Resnick, P.J., and Camlin-Shingler, K.: "Insight and its Relationship to Violent Behavior in Patients with Schizophrenia," <u>Am J Psychiatry</u>, 161:1712-14, 2004.

68.  Resnick, P.J., "Day in the Life of a Psychiatrist-in-the-Making," <u>Academic Psychiatry</u>, 29:397-399, 2005.

69.  Hatters-Friedman, S.H. and Resnick, P.J.: "Psychiatric Treatment in Prison,"<u>The Journal of the American Academy of Psychiatry and the Law</u>, Legal Digest, 33:274-276, 2005.

70.  Hatters-Friedman, S.H., Shelton, M.D., Elhaj, O., Youngstrom, E.A., Rapport, D.J., Packer, K.A., Bilali, S.R., Jackson, K.S., Sakai, H.E., Resnick, P.J., Findling, R.L. and Calabrese, J.R.: "Gender Differences in Criminality: Bipolar Disorder with Co-occurring Substance Abuse, <u>The Journal of the American Academy of Psychiatry and the Law</u>, 33:188-195, 2005.

71.  Resnick, P.J. and Knoll, J.: "Faking It: How to Detect Malingered Psychosis," <u>Current Psychiatry</u>, 4:13-25, 2005.

72.  Hatters-Friedman, S.H., Horwitz, S.M., Resnick, P.J.: "Child Murder by Mothers: A Critical Analysis of the Current State of Knowledge and a Research Agenda," <u>Am J Psychiatry</u>, 162:1578-1587, 2005.

73.  Hatters-Friedman, S.H., Hrouda, D.R., Holden, C.E., Noffsinger, S.G. and Resnick, P.J.: "Child Murder Committed by Severely Mentally Ill Mothers:  An Examination of Mothers Found Not Guilty by Reason of Insanity," <u>J Forensic Sci</u>, 50:1466-1471, 2005.

74.  Hatters-Friedman, S.H., Hrouda, D.R., Holden, C.E., Noffsinger, S.G., and Resnick, P.J.: "Filicide-Suicide: Common Factors in Parents Who Kill Their Children and Themselves," <u>The Journal of the American Academy of Psychiatry and the Law</u>, 33:496-504, 2005.

75.  Resnick, P.J. and Sorrentino, R.: "Forensic Issues in Consultation-Liaison Psychiatry," <u>Psychiatric Times</u>, pp. 26-28, December 2005.

76.  Resnick, P.J.: "Malingering of Psychiatric Symptoms," Profiles in Psychiatry, <u>Primary Psychiatry</u>, 13:35-38, 2006.

77. Knoll, J. and Resnick, P.J.: "The Detection of Malingered Post-traumatic Stress Disorder," <u>Psychiatric Clinics of North America</u>, 29:629-647, 2006.

78. Friedman, S.H. and Resnick, P.J.: "Mothers Thinking of Murder: Considerations for Prevention," <u>Psychiatric Times</u>, Vol. 23(10), p.9, 2006.

79. Scott, C.L. and Resnick, P.J.: "Violence Risk Assessment in Persons with Mental Illness," <u>Aggression and Violent Behavior</u>, 11:598-611, 2006. Available online at <u>www.sciencedirect.com</u>.

80. Soliman, S, and Resnick, P.J.: "Release of Insanity Acquittees: Polysubstance Dependence and Personality Disorder, Not Otherwise Specified, Were Held to be Mental Diseases for Purposes of Continued Civil Commitment of an Insanity Acquittee," <u>The Journal of the American Academy of Psychiatry and the Law</u>, 34:555-557, 2006.

81. Knoll, J. And Resnick, P.J.: Stalking Intervention, <u>Current Psychiatry</u>, 6:31-38, 2007.

82. Resnick, P.J.: "My Favorite Tips for Detecting Malingering and Violence Risk," <u>Psychiatric Clinics of North America</u>, 30:227-232, 2007.

83. Resnick, P.J.: The Andrea Yates Case: Insanity on Trial, The 2006 Friedman & Gilbert Criminal Justice Forum, <u>55 Clev. St. L. Rev</u>. 147 2007.

84. Hatters-Friedman, S. and Resnick, P.J.: "Child Murder by Mothers: Patterns and Prevention," <u>World Psychiatry, Official Journal of the World Psychiatric Association</u>,6:137-141, 2007.

85. Freedman, R., Ross, R., Michels, R., Appelbaum, P., Siever, L., Binder, R., Carpenter, W., Hatters-Friedman, S., Resnick, P.J., and Rosenbaum, J.: "Psychiatrists, Mental Illness, and Violence," <u>Am J Psychiatry</u> 164:1315-1317, 2007.

86. Resnick, P.J. and Knoll, J.: "Being an Effective Psychiatric Expert Witness," <u>Psychiatric Times</u>, Medicolegal Issues, p. 9-12, November 2007.

87. Smith, D. And Resnick, P.J.: "Amnesia and Competence to Stand Trial, <u>Journal of the American Academy of Psychiatry and the Law</u>, 35:541-542, 2007.

88. Friedman, S.H., Sorrentino, R.M., Stankowski, J.E., Holden, C.E., and Resnick, P.J.: "Psychiatrists' Knowledge about Maternal Filicidal Thoughts," <u>Comprehensive Psychiatry</u>, 49:106-110, 2008.

89. Knoll, J.L., Resnick, P.J.: Deposition Dos and Don'ts: How to Answer 8 Tricky Questions, <u>Current Psychiatry</u>, 7:25-40, 2008.

90. Knoll, J.L., Resnick, P.J.: Deposition Dos and Don'ts: How to Answer 8 Tricky Questions, <u>OBG Management</u> Vol. 20, p. 24, 2008.

91. Hall, R.C.W. and Resnick, P.J.: "Psychotherapy Malpractice: New Pitfalls," <u>Journal of Psychiatric Practice</u>, 14:119-121, 2008.

92. Knoll, J.L. and Resnick, P.J.: "Insanity Defense Evaluations: Basic

Procedure and Best Practices," Psychiatric Times, Vol. XXV, Issue 14, p. 35, December 2008.

93. Lockey, C.L. and Resnick, P.J.: "Physicians' Duty to Prevent Harm to Nonpatients," The Journal of the American Academy of Psychiatry and the Law, 36:580-582, 2008.

94. Friedman, S.H., Resnick, P.J. and Rosenthal, M.B.: "Postpartum Psychosis: Strategies to Protect Infant and Mother from Harm," Current Psychiatry, 8(2):40-46, 2009.

95. Friedman, S.H. and Resnick, P.J.: "Neonaticide: Phenomenology and Considerations for Prevention, International Journal of Law and Psychiatry, 32:43-47, 2009.

96. West, S.G., Friedman, S.H., and Resnick, P.J.: "Fathers Who Kill Their Children: An Analysis of the Literature," J Forensic Sci, 54:(2), 2009.

97. Hatters-Friedman, S. and Resnick, P.J.: "Parents Who Kill," Psychiatric Times, p. 10, May 2009.

98. Scott, S. and Resnick, P.J.: Assessing Potential for Harm: Would Your Patient Injure Himself or Others? Current Psychiatry, 8:24, 2009.

99. Resnick, P.J. (2009) Meurtre de nouveau-né: Une synthèse psychiatrique sur le néonaticide, transl. Genet, M.-C.; Evans, R.; Voruz, V.; Yang, S. Enfances & Psy, 44 (3):42-54.

100. Resnick, P.J. (2009) Retour sur le néonaticide: Perspectives actuelles, transl. Chaffel, B.; Voruz, V.; Yang, S. Enfances & Psy, 44(3):55-59.

101. Hatters-Friedman, S. and Resnick, P.J.: "Postpartum Depression: An Update," Women's Health, 5(3):1-9, 2009.

102. Poe, E. and Resnick, P.J.: "Competence to Waive Mitigation,"The Journal of the American Academy of Psychiatry and the Law, 34:565-567, 2009.

103. Soliman, S. and Resnick, P.J.: "Assessment of Feigning in Adjudicative Competence Evaluations," Behavioral Sciences and the Law, 28:614-629, 2010.

104. Friedman, S.H. and Resnick, P.J.: "Child Murder and Mental Illness in Parents: Implications for Psychiatrists," J. of Clin Psychiatry 72:587-588, 2010.

105. Kambam, P. and Resnick, P.J.: Ineffective Counsel and Mental Health Expert Witness Testimony in an Insanity Defense, Legal Digest, The Journal of the American Academy of Psychiatry and the Law, 38:599-601, 2010.

106. Jain, A. and Resnick, P.J.: "Jury Instructions Regarding Death Penalty Mitigating Factors," Legal Digest, 39:579-580, 2011

Book Chapters and Contributions

1. Resnick, P. J., "Infanticide," <u>Modern Perspectives in Psycho-Obstetrics</u>, John Howells (Ed.), Edinburgh: Oliver & Boyd, 1972.

2. Resnick, P. J., "Forensic Psychiatry," <u>Handbook of Legal Medicine</u>, C. Hirsch, R. C. Morris, A. R. Moritz, Fifth Edition, St. Louis: The C. V. Mosby Company, 1979.

3. Resnick, P. J., "Insanity," <u>Manual of Association of Ohio Forensic Psychiatric Center Directors</u>, 1979.

4. Resnick, P. J., "Neonaticide," <u>Traumatic Abuse and Neglect of Children at Home</u>, Gertrude Williams and John Money (Eds.), Baltimore: The John Hopkins Press, 1980.

5. Resnick, P. J., "The Psychiatrist as an Expert Witness," Contributor to the chapter, "Examination of Expert Witnesses" in <u>Preparation of Medical Cases for Settlement and Trial</u> by L. Holley, Norcross, Georgia: The Harrison Company Publishers, 1982.

6. Resnick, P. J., "Physical Assault in a Psychiatric Hospital: Legal Implications," <u>Veterans Administration Hospital Manual on Management of Disruptive Behavior</u>, 1983.

7. Resnick, P. J., "The Mental Health Professional as Expert Witness," <u>Manual of Association of Ohio Forensic Psychiatric Center Directors</u>, 2nd Edition, 1984.

8. Resnick, P. J., "Psychiatry and the Law," <u>Clinical Psychiatry</u>, H. Sudak (Ed.), St. Louis: Warren S. Green, 1985.

9. Resnick, P. J., "Victim Response to Rape and Violence," <u>Clinical Psychiatry</u>, H. Sudak (Ed.), St. Louis: Warren S. Green, 1985.

10. Resnick, P. J., Foreword, <u>Critical Issues in American Psychiatry and the Law: Volume II</u>, R. Rosner (Ed.), New York: Plenum; 1985.

11. Resnick, P.J., "The Psychiatrist in Court," <u>Psychiatry</u>, J.O. Cavenar, Jr. (Ed.), Philadelphia: Lippincott; 1986.

12. Resnick, P.J., "Malingered Psychosis," In R. Rogers (Ed.) <u>Clinical Assessment of Malingering and Deception</u>, New York: Guilford Press, 1988.

13. Resnick, P.J., "Malingering of Post-Traumatic Disorders," In R. Rogers (Ed.) <u>Clinical Assessment of Malingering and Deception</u>, New York: Guilford Press, 1988.

14. Resnick, P.J., "End Times" (Necrophila) <u>DSM-III-R Casebook</u>, Spitzer, Gibbon, Skodol, Williams & First (Eds.) American Psychiatric Press, 1989; repeated in <u>DSM IV Casebook</u>, 1994.

15. Roberts, A.C., Resnick, P.J., "Malingering Closed Head Injury Symptoms," <u>Litigating Closed Head Injury Cases</u>, A.C.

Roberts (Ed.), McGraw-Hill, 1989.

16. Ellis, J., Resnick, P., et al, "Competence and Confessions," ABA Criminal Justice Mental Health Standards, George, B.J., Jr., General Reporter, American Bar Association, 1989.

17. Resnick, P.J., "The Diagnosis of Malingering," Workers' Compensation, Chicago: Defense Research Institute, 1990.

18. Resnick, P.J., "Expert Witness Depositions," The Vocational Expert Primer, Terry L. Blackwell, Athens, Georgia Southern Press, 1991.

19. Resnick, P.J., "Expert Witness Clothing," The Vocational Expert Primer, Terry L. Blackwell, Athens, Georgia Southern Press, 1991.

20. Resnick, P.J., "Guidelines for Courtroom Testimony," Principles and Practice of Forensic Psychiatry, R. Rosner (Ed.), Chapman and Hall, New York, 1994.

21. Resnick, P.J., "Malingering," Principles and Practice of Forensic Psychiatry, R. Rosner (Ed.), Chapman and Hall, 1994.

22. Resnick, P.J., "Malingering," Mental and Emotional Injuries in Employment Litigation, F. Kulick and J. McDonald (Eds.), The Bureau of National Affairs, Inc. Washington, D.C., 1994.

23. Resnick, P.J., "Guidelines for the Evaluation of Malingering in Posttraumatic Stress Disorder," Posttraumatic Stress Disorder in Litigation: Guidelines for Forensic Assessment, R.I. Simon (Ed.), American Psychiatric Press, Inc., Washington, D.C., 1995.

24. Resnick, P.J.: "Malingered Psychosis," In Rogers, R. (Ed.), Clinical Assessment of Malingering and Deception, 2nd ed., New York: The Guilford Press, 1997.

25. Resnick, P.J.: "Malingering of Posttraumatic Disorders," In Rogers, R. (Ed.), Clinical Assessment of Malingering and Deception, 2nd ed., New York: The Guilford Press, 1997.

26. Kausch, O. and Resnick, P.J., "The Assessment of Violence in the Workplace and Its Legal Ramifications," in Flach, F. (Ed.) A Comprehensive Guide to Malpractice Risk Management and Psychiatry, New York: Hatherleigh Press, 1998.

27. Kausch, O., Resnick, P.J., "Psychiatric Assessment of the Violent Offender," Handbook of Psychological Approaches with Violent Offenders: Contemporary Strategies and Issues, V.B. Van Hasselt & M. Herson (Eds.), Kluwer Academic/Plenum Publishers, New York, 1999.

28. Lewis, C.F. and Resnick, P.J.: "Infanticide in the U.S.," Violence in America: An Encyclopedia, Charles Scribner & Sons: New York; 2:171-174, 1999.

29. Scott, C. and Resnick, P.J.: "The Prediction of Violence," in Aggression and Violence: An Introductory Text, V.B. Van Hasselt and M. Herson (Eds.) Simon and Schuster; 1999.

30. Resnick, P.J. and Harris, M.R.: "Retrospective Assessment of Malingering in Insanity Defense Cases," Predicting the Past: The Retrospective Assessment of Mental States in Civil and Criminal Litigation, Simon R. and Shuman, D. (Eds), American Psychiatric

Press, 2002.

31. Resnick, P.J.: "Malingered Disability Evaluation" in K. Heilbrun, G. Marczyk, and D. DeMatteo: <u>Forensic Mental Health Assessment: A Casebook</u>, New York: Oxford University Press, 2002.

32. Resnick, P.J.: "Guidelines for Evaluation of Malingering in PTSD,"in Simon, R.I., (Ed.), <u>Posttraumatic Stress Disorder in Litigation: Guidelines for Forensic Assessment</u>, 2nd edition, American Psychiatric Publishing Inc., Washington D.C./London, England, 2003.

33. Resnick, P.J.: Book Review of <u>Disorders of Simulation</u>: <u>Malingering, Factitious Disorders, and Compensation Neurosis</u>, edited by G.L. Hutchinson,Madison, CT, Psychosocial Press, 2001; <u>Psychiatric Services</u>, 54:580, 2003.

34. Resnick, P.J. and Hatters-Friedman, S.: Book Review: <u>Infanticide: Psychosocial and Legal Perspectives on Mothers Who Kill</u>, (edited by Margaret G. Spinelli, M.D.; Washington D.C., American Psychiatric Publishing, Inc., 2003), <u>Psychiatric Services</u>, 54:1172, 2003.

35. Resnick, P.J., "Guidelines for Courtroom Testimony," in <u>Principles and Practice of Forensic Psychiatry</u>, R. Rosner (Ed.), 2nd edition, Chapman and Hall, New York, 2003.

36. Resnick, P.J., "Malingering,"in <u>Principles and Practice of Forensic Psychiatry</u>, R. Rosner (Ed.), 2nd edition, Chapman and Hall, 2003.

37. Resnick, P.J., Book Review: <u>Malingering and Illness Deception</u>, by Halligan, P., Bass, C., and Oakley, D., New York: Oxford University Press, 2003, <u>Journal of Forensic Psychiatry</u>, 15:362-363, 2004.

38. Scott, C.L. and Resnick, P.J.: "Patient Suicide and Litigation" in <u>Textbook of Suicide Assessment and Management</u>, Simon, R.I. and Hales, R.E. (Eds), p. 527-544, American Psychiatric Publishing, Inc., Washington D.C., 2006.

39. Resnick, P.J. and Sorrentino, R.M.: "Forensic Considerations," in Blumenfield, M. and Strain, J.J. <u>Psychosomatic Medicine</u>, Lippincott, Williams, and Wilkins, 2006.

40. Resnick, P.J.: "Stalking Risk Assessment" in <u>Stalking: A Psychiatric Perspective</u>, Pinals D. (Ed), Oxford Press, 2007.

41. Resnick, P.J. and Zuchowski, S.J.: "Malingering and Psychopathic Disorders," in (Felthous, A. and Sass, H., Editors) The International Handbook of Psychopathic Disorders and the Law, Volume II, Laws and Policies,John Wiley and Sons, Ltd. 2007.

42. Zuchowski, S.J. and Resnick, P.J.: "Malingering in Correctional Settings," in <u>Correctional Psychiatry: Practice Guidelines and Strategies</u> (Eds: Thienhaus, O.J. and Piasecki, M.), Kingston, New Jersey: Civic Research Institute, Inc., Chapter 9, 2007.

43. Knoll, J.L. and Resnick, P.J.: "Insanity Defense Evaluations: Toward a Model for Evidence-Based Practice," <u>Brief Treatment and Crisis Intervention</u>, Oxford University Press, 2007.

44. Scott, C.L., Quanbeck, C.D. and Resnick, P.J.: "Assessment of Dangerousness," Chapter 44, pgs. 1655-1672, <u>The American Psychiatric Publishing Textbook of Psychiatry</u>, 5th edition, 2008.

45. Resnick, P.J. and Knoll, J.L.: "Malingered Psychosis," in Clinical Assessment of Malingering and Deception, Third Edition, Rogers, R. (Ed.) New York: Guilford Publications, 2008.

46. Resnick, P.J. West, S. and Payne, J.W.: "Malingering of Posttraumatic Disorders," in Clinical Assessment of Malingering and Deception, Third Edition, Rogers, R. (Ed.) New York: Guilford Publications, 2008.

47. Scott, C.L. and Resnick, P.J.: "Forensic Psychiatry," in The Medical Basis of Psychiatry, (Eds: S.H. Fatemi, and P.J. Clayton, (3rd ed.) Humana Press, 2008.

48. Resnick, P. and Soliman, S.: "Draftsmanship," in The Psychiatric Report: Principles and Practice of Forensic Writing, Buchanan A. and Norko, M. (Eds.), Cambridge University Press, 2011.

49. Soliman, S. and Resnick, P.: "Forensic Assessment," in The Encyclopedia of Psychological Trauma, (Eds: Reyes, G., Elhai, J.D. and Ford, J.D.), John Wiley and Sons: New Jersey; in press.

50. Scott, C.L. and Resnick, P.J.: "Patient Suicide and Litigation" in Textbook of Suicide Assessment and Management, Simon, R.I. and Hales, R.E. (Eds), 2nd edition in press. American Psychiatric Publishing, Inc., Washington D.C.

## Poster Presentations at National Meetings

1. Assessing Risk Factors for Filicide by Mentally Ill Parents. Hatters-Friedman, S., Resnick, P., et al. American Academy of Psychiatry and the Law, San Antonio, TX, Oct 2003.

2. Violence and Schizophrenia: Further Observations on the Standard of Care. Hrouda, D., Resnick, P., et al. American Academy of Psychiatry and the Law, San Antonio, TX, Oct 2003.

## Videotape Productions:

1. Psychiatric Testimony in an Insanity Trial (FV 65-66)
2. Criminal Responsibility in a Family Murder (FV 14)
3. The Many Faces of Competence (FV 89)
4. Physical Assault: Legal Considerations (FV 138)
5. Prediction of Dangerousness in Insanity Acquittees (FV 115A)
6. Differential Diagnosis of Malingering (FV 108A)
7. Insanity and Competence in a Federal Bomber (FV 110)
8. Demon Possession, Filicide, Matricide and Insanity (FV 64B)
9. Mock Civil Commitment Hearing of a Paranoid Woman (FV 82)
10. Mentally Retarded Rapist (FV 79)
11. Insanity in a Necrophilic Homicide (FV 148A)
12. The Psychiatric Legal Report Lecture (FV 162)
13. Mental Health Professional as Expert Witness Lecture (FV 160)
14. Detection of Malingering Lecture (FV 159)
15. Prediction of Dangerousness Lecture (FV 161)
16. The Violent Patient: Protecting Yourself and Practice, CME, 1994
17. How to Develop a Forensic Practice, CME, 1996
18. Duty to Protect in Ohio, Ohio Department of Mental Health, 2000
19. Stalking: Risk Assessment, 2008
20. Many Faces of Competence, Preferred Professional Insurance, 2010.
21. Suicide Risk Assessment, Preferred Professional Insurance, 2010.
22. Inside the Mind of a Terrorist: The Unabomber, University of New

Mexico
23. The Andrea Yates Case: Insanity on Trial, University of New Mexico

Audiotape Productions:

1. Psychiatric Testimony. Audio-Digest Psychiatry. Vol. 12, No. 22, 1983.
2. Post-Traumatic Stress Disorder. American College of Psychiatry, "Psychiatric Update," Vol. 4, No. 12, 1984.
3. Meet the Malingerer. Quinn, K.M. and Resnick, P.J., Audio-Digest Psychiatry, Vol. 14, No. 24, 1985.
4. Malingering and Deception. Rogers, R. and Resnick, P.J., Guilford Publications, 1988.
5. Malingered Mental Illness, Audio-Digest Psychiatry, Vol. 19, No. 15-16, 1990.
6. The Insanity Defense, Audio-Digest Psychiatry, Vol. 20, No. 18-19, 1991.
7. The Psychiatrist as Expert Witness, Audio-Digest Psychiatry, Vol. 22, No. 15-16, 1993.
8. Profiles in Violence, Audio-Digest Family Practice, Vol. 42, No. 32, 1994.
9. Basic Law for Psychiatrists, Audio-Digest Psychiatry, Vol. 23, No. 19, 1994.
10. Violence and Danger, Audio-Digest Psychiatry, Vol. 24, No. 16, 1995.
11. Releasing Violent Patients, Audio-Digest Psychiatry, Vol. 25, No. 7, 1996.
12. Trends in Malpractice, Audio-Digest Psychiatry, Vol. 25, No. 11, 1996.
13. Clinical Prediction of Violence, Specialized Training Services, 1996.
14. Malingering and Feigned Mental Illness. Audio-Digest Psychiatry, Vol. 26, No. 13 and 14, 1997.
15. Suicide Risk Assessment and Liability, Audio-Digest Psychiatry, Vol. 27, No. 3 and 4, 1998.
16. Duties to Third Parties, Audio-Digest Psychiatry, Vol. 27, No. 4, 1998.
17. Psychic Harm and Workers' Compensation, Audio-Digest Psychiatry, Vol. 27, No. 24, 1998.
18. Violence Risk Assessment, Audio-Digest Psychiatry, Vol. 28, No. 8, 1999.
19. Basic Law for Psychiatrists, Audio-Digest Psychiatry, Vol. 28, No. 18, 1999.
20. Insanity Defense, Audio-Digest Psychiatry, Vol. 28, No. 19, 1999.
21. Stalking, Audio-Digest Psychiatry, Vol. 29, No. 9, 2000.
22. Risk Assessment for Violence, Psychiatric Update, Vol. 22, No. 4, 2002.
23. Forensic Psychiatry Update, Audio-Digest Psychiatry, Vol. 32, No. 9, 2003.
24. Suicide Risk Assessment and Malpractice Avoidance, Audio-Digest Psychiatry, Vol. 34, No. 2, 2005.
25. Competency and the Law, Audio-Digest Psychiatry, Vol. 36, No. 9, 2007.
26. Violence Risk Assessment, Audio-Digest Psychiatry, Vol. 36. No. 13, 2007.
27. Detection of Malingered Psychosis, Audio-Digest Psychiatry, Vol. 37, No. 20, 2008.
28. Basic Law for Psychiatrists, Audio-Digest Psychiatry, Vol. 39, No 7, 2010.
29. Psychiatric Malpractice, Audio-Digest Psychiatry, Vol 39, No. 13, 2010.

30. Detection of Malingering, Audio-Digest Psychiattry, Vo. 39, No. 22, 2010.


Grants Received:

National Institute of Mental Health (1980-83)        $  129,600
      Fellowship in Forensic Psychiatry
Ohio Department of Mental Health (1979-2010)         $2,575,000
      Training in Forensic Psychiatry


Major International Presentations:

1.  Some Psychodynamic Considerations in Rapists. Fifth World Congress on Sexology; Jerusalem, Israel, June, 1981.

2.  Expert Witness Testimony. International Conference on Law, Psychiatry and Ethics; Haifa, Israel, February, 1983.

3.  The Insanity Defense: An International Perspective. American Academy of Psychiatry and the Law; Nassau, Bahamas, Oct, 1984.

4.  Necrophilia and Lust-Murder. Royal College of Psychiatry; London, England, October, 1986.

5.  Military Medical Malpractice. Osan Air Force Base; Songtan City, Korea; November, 1987.

6.  Malingering. International Perspectives on Crime, Justice and Public Order, St. Petersburg University, St. Petersburg, Russia, June, 1992.

7.  Prediction of Violence. Israel Psychiatric Association, Jerusalem, Israel, July, 1992.

8.  Malingered Mental Illness. Royal Australian and New Zealand College of Psychiatrists, Brisbane, Australia, December, 1993.

9.  Violence Prediction. Regional Forensic Services, Auckland, New Zealand, December, 1993.

10. Child Murder by Parents. Society of South African Psychiatrists, Capetown, South Africa, September, 1994.

11. PTSD, Crime and Insanity. School of Medicine, Christchurch, New Zealand, Feb, 1995.

12. Psychic Harm. Royal Australian and New Zealand College of Psychiatrists, Sidney, Australia, Feb, 1995.

13. Decision Making about Malingering, Dennenoord Hospital, Zuidlaren, Holland, November, 1995.

14. La Deteccion de la Simulacion de la Enfermedad Mental. Spanish Society of Legal Psychiatry, Toledo, Spain, Oct, 1996.

15. Psychiatrist as Expert Witness. Henri van der Hoeven Kliniek, Utrect, Holland, 1998.

16. Forensic Psychiatry Course. Asia-Pacific Congress of Medicine,

Singapore, May, 1999.

17. Suicide Risk Assessment. <u>Thailand Department of Mental Health</u>, Bangkok, Thailand, May, 1999.

18. Malingering. <u>Maudsley Institute of Psychiatry</u>, London, England, June, 2000.

19. Violence Risk Assessment. <u>Spanish Society of Legal Psychiatry</u>, Madrid, Spain, June, 2000.

20. Risk Assessment for Violence. <u>St. Vincent's Hospital</u>, Dublin, Ireland, September 2000.

21. Curso Pos-Graduata em Psiquiatria Forense. <u>Portugese Psychiatric Association</u>, Lisbon, Portugal, May, 2001.

22. Forensic Psychiatry Course (Rettspsykiatri). <u>Kompetansesenteret</u>, Bergen, Norway, August 2001.

23. Malingering Detection. <u>Hong Kong College of Psychiatrists</u>, Hong Kong, China, April 2002.

24. Future Directions in Forensic Psychiatry. <u>Royal Australian and New Zealand College of Psychiatry</u>, Brisbane, Australia, April, 2002.

25. Legal Issues in Mental Health. <u>Kompetansesenteret</u>, Bergen, Norway, August, 2002.

26. Postpartum Filicide. <u>Boston University Conference on Obstetrics, Neonatology, and the Law</u>, Panama, 2009.

27. Spousal Homicide-Suicide: Is it Foreseeable? <u>Boston University Conference on Medical Negligence</u>, Cabo San Lucas, Mexico, 2010.

28. Maternal Filicide-American Perspective. <u>Royal Edinburgh Hospital</u>, Edinburgh, Scotland, August, 2011.

29. Suicide Risk Assessment. <u>Italian Society of Psychopathology</u>, Rome, Italy, February 2012.


<u>Major American Presentations</u>:

1. Child Murder by Parents. <u>American Psychiatric Association</u>; Boston, Massachusetts, May, 1968.

2. Murder of the Newborn. <u>American Psychiatric Association</u>; Miami Beach, Florida, May, 1969.

3. Psychiatry and Criminal Law. <u>Ohio Common Pleas Judges Association</u>; Columbus, Ohio, 1976.

4. Physical Assault in a Psychiatric Hospital: Legal Implications. <u>Veterans Administration Workshop</u>; St. Louis, Missouri, 1978.

5. Civil Commitment of the Mentally Ill Criminal. <u>Ohio Judicial Conference</u>; Cleveland, Ohio, September, 1978.

6. The Political Offender: Forensic Psychiatric Considerations.

American Academy of Psychiatry and the Law; Montreal, Quebec, October, 1978.

7. Psychological Profile of Hostage-Takers. American Society of Criminology; Dallas, Texas, November, 1978.

8. Legal Issues in the Management of the Violent Patient. Ohio Department of Mental Health; Columbus, Ohio, Sept, 1979.

9. Interview Techniques in Arson Cases. Conference on Arson Investigation - Greater Cleveland Crime Prevention Committee; Cleveland, Ohio, April, 1981.

10. Debate: The Insanity Defense Should Be Abolished. Mt. Holyoke College Symposium; S. Hadley, Massachusetts, January, 1982.

11. Filicide, Parricide, Insanity and Its Aftermath, American Academy of Psychiatry and the Law; New York, New York, October, 1982.

12. The Many Faces of Competence. U.S. Army Forensic Psychiatry Conference; Fort Gordon, Georgia, February, 1983.

13. Insanity in Family Murder. American Academy of Psychiatry and Law, Midwest Chapter; Chicago, Illinois, April, 1983.

14. Civil Issues and the Forensic Psychiatrist. University of South Florida, Tampa, Florida, March, 1984.

15. Psychic Injury: Psychic Harm. American Academy of Psychiatry and the Law, Midwest Chapter; Chicago, Illinois, March, 1984.

16. Psychiatric Malpractice. Kentucky Psychiatric Association; Lexington, Kentucky, April, 1984.

17. Victims of Violence. University of Massachusetts Medical Center; Worcester, Massachusetts, April, 1984.

18. Demon-possession, Self-Mutilation, and Insanity. University of Cincinnati; Cincinnati, Ohio, May, 1984.

19. Psychiatric View of Malpractice. American Academy of Psychiatry and the Law, Midwest Chapter; Detroit, Michigan, September, 1984.

20. Treatment of the Rapist. Ohio Department of Health, Rape Prevention Conference; Columbus, Ohio, September, 1984.

21. Post-Traumatic Stress Disorders In Murderers. Harry, B. and Resnick, P.J. American Academy of Forensic Sciences; Las Vegas, Nevada, February, 1985.

22. Police Interrogation of Mentally Ill Suspects. Trumbull County Law Enforcement Seminar; Warren, Ohio, April, 1985.

23. Basics of Professional Liability. Wayne County Medical Society; Detroit, Michigan, April, 1985.

24. Multiple Personality Disorders and the Legal System. American Psychiatric Association; Dallas, Texas, May, 1985.

25. Factitious Disorders: The Medical-Legal Interface. _American Psychiatric Association_; Dallas, Texas, May, 1985.

26. The Insanity Defense: A History of Revenge, Reform, and Rationalization. _Ohio Association of Forensic Psychiatric Center Directors_; Columbus, Ohio, June, 1985.

27. Perceptions of Psychiatric Testimony: A Historical Perspective on the Hysterical Invective. _American Academy of Psychiatry and the Law_; Albuquerque, New Mexico, October, 1985.

28. Mutism, Malingering and Competence to Stand Trial. Daniel, A. and Resnick, P. J. _American Academy of Psychiatry and the Law_; Albuquerque, New Mexico, October, 1985.

29. Psychiatric Evaluation of Victims of Violence. _American College of Legal Medicine_; Albuquerque, New Mexico, October, 1985.

30. The Dangerous Mentally Ill: An International Perspective. _American Academy of Psychiatry and the Law, Chesapeake Chapter_; Columbia, Maryland, October, 1985.

31. Principles of Psychiatric-Legal Report-Writing, _American Academy of Psychiatry and the Law_, Albuquerque, New Mexico, Oct 1985.

32. Assessment of Civil Competence. _University of Nebraska_; Omaha, Nebraska, October, 1986.

33. Sanity in a Psychotic Revolutionary Extortionist Bomber. _American Academy of Psychiatry and the Law_; Phila, PA, 1986.

34. Do Psychiatrists Excuse Sin in Sex Offenders: Historical Perspectives. _John Hopkins University_; Baltimore, MD, 1987.

35. Post-Traumatic Stress Disorder, Crime and Insanity. _Center for Stress Recovery_; Richfield, Ohio, April, 1987.

36. Paraphilias and the Insanity Defense. _American Academy of Psychiatry and the Law, Midwest Chapter_; Cincinnati, OH, 1987.

37. Trends in Psychiatric Malpractice: A Tale of Sex and Violence. _Arizona Psychiatric Society_; Tucson, Arizona, April, 1987.

38. Post-partum Depression and Criminal Responsibility. _Pennsylvania State University_; University Park, PA, 1987.

39. Infanticide, The Law, and Postpartum Depression. _Ohio Department of Mental Health_; Independence, Ohio; October, 1987.

40. Necrophilia, Murder, and Insanity. _American Academy of Psychiatry and the Law_; Ottawa, Ontario, Canada; October 1987.

41. Forensic Aspects of Multiple Personality Disorder. _American Academy of Psychiatry and the Law_; Ottawa, Ontario; 1987.

42. "Compensation Neurosis," Conversion Disorder and Functional Overlay. _American Academy of Psychiatry and the Law_; Ottawa, Ontario, Canada; October, 1987.

43. The Right to Psychiatric Treatment. <u>Dammasch State Hospital</u>: Wilsonville, Oregon; March, 1988.

44. Victims, Violence, and Viciousness. <u>Ohio Association of Forensic Directors</u>; Columbus, Ohio; June, 1988.

45. Direct and Cross-examination of Mental Health Experts. <u>Ohio Prosecutors Association</u>; Cincinnati, Ohio; June, 1988.

46. Legal Regulation of Psychiatry. <u>Georgia Psychiatric Association</u>; Amelia Island, Florida; August, 1988.

47. Filicide, Decapitation and Insanity. <u>American Academy of Psychiatry and the Law</u>; San Francisco, California, Oct., 1988.

48. Psychic Damages in Victims of Violence. <u>American Academy of Psychiatry and the Law</u>; San Francisco, California, Oct, 1988.

49. Video Workshop on Cross-Examination, <u>Hastings College of Law</u>, University of California, San Francisco, California, Oct 1988

50. The Right to Refuse Treatment. <u>Ohio Psychiatric Association</u>, Columbus, Ohio, April, 1990.

51. Child-Stealing by Cesarean Section. <u>Ohio Association of Forensic Directors</u>, Columbus, Ohio, June, 1990.

52. Working with the Forensic Client in the Community. <u>National Case Management Conference</u>, Cincinnati, Ohio, September, 1990.

53. The Right to Suicide. <u>American Academy of Psychiatry and the Law, Midwest Chapter</u>, Chicago, Illinois, April, 1991.

54. Un-understandable Murder. <u>American Academy of Psychiatry and the Law</u>, Orlando, Florida, October, 1991.

55. Medical Malpractice. <u>Marshfield Clinic</u>, Marshfield, WI, 1992.

56. Juror Post-Traumatic Stress Disorder. <u>Cuyahoga County Common Pleas Judges</u>, Cleveland, Ohio, January, 1992.

57. Psychological Damages. <u>Cuyahoga County Bar Association</u>, Cleveland, Ohio, February, 1992.

58. Medication, Madness, and Murder. <u>American Academy of Psychiatry and the Law, Midwest Chapter</u>, Cleveland, Ohio, April 1992.

59. Jeffrey Dahmer: Sick or Sane. <u>American Academy of Psychiatry and the Law</u>, Boston, Massachusetts, October, 1992.

60. Proposed Standards for Assessment of Malingering in PTSD. <u>Georgetown University</u>, Washington, D.C., November 1992.

61. Prozac and Violence: A Biopsychosocial Legal Analysis. <u>Ohio Association of Forensic Centers</u>, Columbus, Ohio, June 1993.

62. Victim Response to Violence. <u>CME</u>, Montreal, Quebec, August 1993.

63. Post-concussion Syndrome, PTSD, and Malingering. <u>State Farm Insurance</u>, New Brunswick, New Jersey, January, 1994.

64. Legal Pitfalls in Treating Psychoses. University of Wisconsin, Madison, Wisconsin, March, 1994.

65. PTSD on Trial: Forensic Fraud or Equitable Examination. Ohio Association of Forensic Centers, Columbus, Ohio, June, 1994.

66. Predictions and Profiles in Workplace Violence. American Society for Industrial Security, Cleveland, Ohio, October, 1994

67. The Clinician's Duty to Warn. U.S. Psychiatric Congress, Washington, D.C., November, 1994.

68. Debate: The Homicide of an Abusive Partner is Justifiable as Self-Defense. American Psychiatric Association, Miami, Florida, May, 1995.

69. Competence to Stand Trial. Ohio Dept. of Mental Health, Columbus, Ohio, May, 1995.

70. Family Murder: Long Term Consequences. Ohio Association of Forensic Centers, Columbus, Ohio, June, 1995.

71. Forensic Fellowship Training Panel. American Academy of Psychiatry and the Law, Seattle, Washington, October, 1995.

72. Pitfalls of Deposition Testimony. Michigan Psychiatric Society, Detroit, Michigan, April, 1996.

73. Managed Care and Malpractice. Georgia Psychiatric Association, Amelia Island, Florida, August, 1996.

74. Mental Illness and the Intentional Act Defense. National Society of Professional Insurance Investigators, Columbus, Ohio, Nov, 1996.

75. How to Develop a Forensic Practice. U.S. Psychiatric Congress, San Diego, CA, May, 1997.

76. Culpable Mental States. American Psychiatric Association, San Diego, CA, May, 1997.

77. Legal Issues in Treating Violent Patients. American Psychiatric Association, San Diego, CA, May, 1997.

78. Releasing Patients After a Violent Act. Ohio Department of Mental Health, Toledo, Ohio, August, 1997.

79. The Insanity Trial of John du Pont. American Academy of Psychiatry and the Law, Denver, Colorado, Oct, 1997.

80. Competence and Undue Influence. Lake County Bar Association, Painesville, Ohio, Nov, 1997.

81. Can We Predict Workplace Violence? U.S. Psychiatric Congress, Orlando, Florida, Nov, 1997.

82. Filicide and Neonaticide. Ohio Department of Mental Health, Cuyahoga Falls, Ohio, Aug, 1998.

83. The Unabomber: Madman or Misanthrope? American Academy of

Psychiatry and the Law, New Orleans, Louisianna, Oct, 1998.

84. Insanity and Satanism. American Academy of Psychiatry and the Law, New Orleans, LA, Oct, 1998.

85. Delusions and Violence. Institute on Psychiatric Services, Los Angeles, California, Oct, 1998.

86. Forensic Psychiatry Course. University of Texas, Houston, Texas, March, 1999.

87. Insanity and Baby Stealing. American Academy of Psychiatry and the Law, Midwest Chapter, Chicago, Illinois, April, 1999.

88. Stalking: Risk Assessment Issues. U.S. Psychiatric Congress, Atlanta, Georgia, Nov, 1999.

89. Psychic Harm and Workers Compensation. Richard Young Hospital, Omaha, Nebraska, Dec, 1999.

90. Civil Commitment. Judicial Commitment Symposium, Charlotte, North Carolina, February, 2000.

91. Lessons from Forensic Psychiatry. Quebec Psychiatric Association, Quebec City, Quebec, May, 2000.

92. Bipolar Disorder and Violence. Institute for Medical Studies, Houston, Texas, May, 2000.

93. Personal Insights into Crimes of Infamy. American Psychiatric Association, New Orleans, LA, May, 2001.

94. Malingered Torture-induced PTSD. Federal Immigration Judges Annual Meeting, New York, NY, June, 2001.

95. Workplace Violence Risk Assessment. Harvard Medical School CME. Boston, Mass, November, 2001.

96. Psychiatric Aspects of Sexual Crimes. Youngstown State University, Youngstown, Ohio, June, 2002.

97. Dealing with the Difficult Defendant and Mental Health Issues, Ohio Judicial College, Toledo, Ohio, July, 2002.

98. Suicide Risk Assessment and Malpractice Avoidance. CME, Maui, Hawaii, Sept 2002.

99. Child-Murder by Parents and Insanity. Amer Acad of Psych and Law, Newport Beach, CA, Oct 2002.

100. Andrea Yates Trial: Implications for Psychiatry. University of Texas, Houston, TX, Dec, 2002.

101. Law and Justice in Infanticide Cases. American Judicature Society, Santa Fe, NM, Feb, 2003.

102. Risk Assessment for Suicide and Violence. Arkansas State Hospital, Little Rock, AR, July, 2003.

103. Psychological Issues in Workers' Compensation. _Cuyahoga Bar Association_, Cleveland, OH, Dec, 2003.

104. Vincent Gigante: Was He Faking Insanity? _American Academy of Psychiatry and the Law_, San Antonio, TX, Oct, 2003.

105. Mentoring in Forensic Psychiatry. _American Academy of Psychiatry and Law_, San Antonio, TX, Oct, 2003.

106. Deceit and Coercion in the Quest for Truth. _American Academy of Psychiatry and Law_, San Antonio, TX, Oct 2003.

107. Risk Assessment for Physical and Sexual Violence. _New York Office of Mental Health_, Albany, NY, April, 2004.

108. Pitfalls in Forensic Practice. _American Academy of Psychiatry & Law_, Scottsdale, AZ, Oct 2004.

109. Psychological Autopsy: Accident or Suicide. _American Academy of Psychiatry and Law_, Scottsdale, AZ, October, 2004.

110. Mental Health Issues in Court. _Ohio Judicial College_, Cleveland, OH, March, 2005.

111. Jurors' Impressions of Filicide. _Midwest Chapter of American Academy of Psychiatry and Law_, Ann Arbor, MI, April, 2006.

112. The Interstate 270 Shooter: Implications for Psychiatry. _Ohio Dept of Mental Health_, Huron, OH, Aug, 2006.

113. The Ultimate Taboo: When the Insanity Acquittee Re-offends. _American Academy of Psychiatry and Law_, Chicago, IL, Oct, 2006.

114. Prevention of Child Murder. _American Academy of Psychiatry and the Law_, Miami Beach, FL, Oct 2007.

115. The Darker Side of Choice: Sex, Violence, and Suicide. _Programs in Psychiatric Nursing_, Little Rock, AK, Nov, 2007.

116. Suicide After Uxoricide, Familicide, and Mass-Murder. _George Washington University_, Washington DC, Dec, 2007.

117. Homicide-Suicide. _American College Health Association_, Orlando, FL, June, 2008.

118. HARM: A Guide to Stalking Risk Assessment. _American Academy of Psychiatry and the Law_, Seattle, WA, Oct, 2008.

119. Neonaticide: Phenomenology, Prevention, and the Law. _American Academy of Psychiatry and the Law_, Seattle, WA, Oct, 2008.

120. Suicide Malpractice Reports, _American Academy of Psychiatry and the Law_, Baltimore, MD, Oct 2009

121. Paranoia and Violence. _Midwest Chapter of American Academy of Psychiatry and the Law_, Pittsburgh, PA March 2010.

122. The Insanity Defense: Overcoming Jury Skepticism. _Public Defenders Association of Iowa_, Tama, Iowa, June, 2010.

123. God's Law, Man's Law, and the Meaning of McNaughtan Wrongfulness, <u>American Academy of Psychiatry and the Law</u>, Tuscon, AZ, Oct, 2010.

124. Psychic Damages in Workers' Compensation, <u>Ohio Self Insured Association</u>, Cleveland OH, February, 2011.

125. Legal Armor for the Psychiatrist, <u>American Physician Institute for Advanced Studies</u>, Ft. Lauderdale, Florida, March 2012.

# EXHIBIT "B"

## AFFIDAVIT OF PHILIP J. DAVIS, Ph.D.

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| | § |
| **COUNTY OF LUBBOCK** | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, appeared Philip J. Davis, Ph.D. who, after being duly sworn did depose as follows:

1.  My name is Philip J. Davis. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2.  I am a psychologist licensed by the State of Texas. I am qualified to evaluate individuals for competency to stand trial pursuant to the requirements set forth in Texas Code of Criminal Procedure, Article 46B. I have evaluated over one thousand two hundred (1200) individuals for competency in my thirty-six year career in clinical and forensic psychology.

3.  I interviewed Justin Chisum in the Lubbock County Detention Center for over two hours on February 2, 2015. In the course of my interview of Justin Chisum he was not oriented to time. He exhibited symptoms of confused thinking and delusional beliefs.

4.  While I did not formally test Mr. Chisum for competency, it is my opinion, based upon my interview of Mr. Chisum, and upon my prior experience, that Justin Chisum is not likely to be found competent to stand trial if a formal evaluation is performed.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Philip J. Davis, Ph.D.
March 10, 2015

SWORN TO AND SUBSCRIBED before me on March 10, 2015, by Philip J. Davis, Ph.D.

_____
Notary Public

> LOIS E. TANNER
> Notary Public, State of Texas
> My Commission Expires
> February 01, 2018

# EXHIBIT
## "C"

# AFFIDAVIT OF ARUN PATEL, M.D.

THE STATE OF TEXAS      §
                             §

COUNTY OF LUBBOCK      §

BEFORE ME, THE UNDERSIGNED AUTHORITY appeared Arun Patel M.D. who, after being duly sworn did depose as follows:

1. My name is Arun Patel. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2. I am a medical doctor licensed by the State of Texas. I have specialized in the field of psychiatry for over twenty one years.

3. I interviewed Justin Chisum in the Lubbock County Detention Center on February 21, 2015. I also reviewed records of Mr. Chisum's recent psychiatric treatment prior to my examination. He appeared to be extremely psychotic at the time of the exam.

4. I did not formally evaluate Justin Chisum for competency. However, it is my opinion, based upon my interview of Mr. Chisum and my prior experience, that he is not likely to be found competent to stand trial at the present time.

5. I believe that Justin Chisum suffers from schizoaffective disorder, bipolar type, with psychosis. His condition is currently very poorly controlled. I do not believe that he is likely to recover without long term hospitalization and intensive inpatient medication management.

FURTHER AFFIANT SAYETH NAUGHT.

Arun Patel, M.D.
March 11, 2015

SWORN TO AND SUBSCRIBED before me on March 11, 2015, by Arun Patel, M.D.

Notary Public

LOIS E. TANNER
Notary Public, State of Texas
My Commission Expires
February 01, 2018

# EXHIBIT
# "D"

# AFFIDAVIT OF APRIL CARTER

THE STATE OF TEXAS    §
                      §
COUNTY OF LUBBOCK     §

BEFORE ME, THE UNDERSIGNED AUTHORITY appeared April Carter who, after being duly sworn did depose as follows:

1.    My name is April Carter. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2.    I have known Justin Chisum since January, 2014. We were initially friends, but began dating soon after we met. I joined Justin's church and we began attending church together. He was always a very kind, decent, respectful and gentle man.

3.    When we first met, I was not aware that he suffered from any type of mental illness. After several weeks, Justin shared with me the fact that he suffered from schizophrenia. He said that he was able to manage his condition with medication. That statement appeared to be true. While I did notice certain things that were different about Justin, his condition did not impair our friendship.

4.    I was around Justin and his daughter, Kylee Forrest, many times. Justin was a very loving, caring, involved father. Kylee's aunt had primary custody of her. Justin would pick Kylie up often, sometimes several times per week. He played with her, he read to her, he taught her right from wrong, he cooked for her, made sure that she was clean and well cared for. He took her to church often. I never had any concerns about Justin's ability to care for Kylee or her safety while she was with Justin.

5.    Sometime in late October or early November Justin began expressing concerns about the physical side effects of the medicine that he was taking to treat his schizophrenia. He began trying another medication under his doctor's supervision. I noticed gradual changes in his mood through the holidays. The changes became more serious in January of this year. Justin sought help, and went into the hospital overnight on January 21st in order to get help. He continued to grow worse after he was released from the hospital. His mood became more unstable toward the end of January. I was stunned when I heard that he had been arrested and charged with Kylee's death.

6.    I have visited Justin in the Lubbock County Detention Center since his arrest. He is not the same person that I knew before. He seems confused, disoriented and argumentative. His thoughts are not coherent. He appears to be very seriously ill and in need of help.

FURTHER AFFIANT SAYETH NAUGHT.

_____
April Carter
March 11, 2015

SWORN TO AND SUBSCRIBED before me on March 11, 2015, by April Carter.

_____
Notary Public

MARGARET RODRIGUEZ
MY COMMISSION EXPIRES
April 8, 2016

# EXHIBIT
## "E"

# ROBERT D. MORGAN
February 1, 2015

John G. Skelton, Jr. Regents Endowed Professor in Psychology
Department of Psychology
Box 42051
Texas Tech University
Lubbock, TX 79409-2051
806-834-7117 (office) or 806-535-4861 (cell)
FAX: 806-742-0818
E-Mail: robert.morgan@ttu.edu

## EDUCATION

1999-2000    Postdoctoral Fellowship in Forensic Psychology, Department of Psychiatry, University of Missouri-Kansas City School of Medicine and Missouri Department of Mental Health

1998-1999    Predoctoral Internship, Federal Correctional Institution-Petersburg, VA (APA-Accredited)

Ph.D.  1999   Counseling Psychology, Oklahoma State University (APA-Accredited). Dissertation: The efficacy of an interpersonal/cognitive-behavioral group psychotherapy program with male inmates

M.S.   1993   Clinical Psychology, Fort Hays State University. Thesis: The utility of DSM-III-R decision trees in relation to diagnostic speed and accuracy

B.S.   1991   Psychology, University of Nebraska at Kearney

## ACADEMIC POSITIONS/APPOINTMENTS

2014 – present          Director, Institute of Forensic Science, Texas Tech University

2011 – present          John G. Skelton, Jr. Regents Endowed Professor in Psychology, Texas Tech University

2011 – present          Professor, Department of Psychology, Texas Tech University

2005 – 2011             Associate Professor, Department of Psychology, Texas Tech University

| May, 2005 – August, 2007 | Director of Training, Counseling Psychology Doctoral Program (APA-Accredited), Department of Psychology, Texas Tech University |
| August, 2004 – May, 2005 | Co-Director of Training, Counseling Psychology Doctoral Program (APA-Accredited), Department of Psychology, Texas Tech University |
| May, 2003 – August, 2004 | Associate Chair of Psychology, Texas Tech University |
| 2000 – 2005 | Assistant Professor, Department of Psychology, Texas Tech University |
| 1994 | Adjunct Instructor, Butler County Community College, Kansas |

## PUBLICATIONS AND PRESENTATIONS

### Refereed Journals

Bartholomew, N. R. & Morgan, R. D. (in press). Co-morbid mental illness and criminalness: Implications for housing and treatment. *CNS Spectrums.*

Morgan, R. D., Batastini, A. B., Murray, D. D., Serna, C., & Porras, C. (in press). Criminal thinking: A fixed or fluid process? *Criminal Justice and Behavior.*

McDonald, B. R. & Morgan, R. D. (in press). Enhancing homework compliance in correctional psychotherapy. *Criminal Justice and Behavior.*

Batastini, A. B., Bolanos, A. D., & Morgan, R. D (2014). Attitudes toward hiring applicants with mental illness and criminal justice involvement: The impact of education and experience. *International Journal of Law and Psychiatry 37*, 524-533.

Morgan, R. D., Kroner, D. G., Mills, J. F., Bauer, R., & Serna, C. (2014). Treating justice involved persons with mental illness: Preliminary evaluation of a comprehensive treatment program. *Criminal Justice and Behavior, 41*, 902-916.

Wilson, A. B., Farkas, K., Ishler, K., Gearhart, M. Morgan, R. D., & Ashe, M. (2014). Criminal thinking styles among people with serious mental illness in jail. *Law and Human Behavior, 38*, 592-601.

Gaines, M. V., Giles, C. L., & Morgan, R. D. (2013). The detection of feigning using multiple PAI scale elevations: A new index. *Assessment, 20*, 437-447. doi: 10.1177/1073191112458146

Gross, N. G., & Morgan, R. D. (2013). Understanding persons with mental illness who are and

are not criminal justice involved: A comparison of criminal thinking and psychiatric symptoms. *Law & Human Behavior, 37*, 175-186. doi: 10.1037/lhb0000013

Magaletta, P. R., Patry, M. W., Patterson, K. L., Gross, N. R., Morgan, R. D., & Norcross, J. C. (2013). Training Opportunities for Corrections Practice: A National Survey of Doctoral Psychology Programs. *Training and Education in Professional Psychology*. Advance online publication. doi: 10.1037/a0033218

Mandracchia, J. T., Shaw, L. B., & Morgan, R. D. (2013). What's with the attitude? Changing attitudes about criminal justice issues. *Criminal Justice & Behavior, 40*, 95-119. doi: 10.1177/0093854812459474

Morgan, R. D. (2013). Vocational psychology in corrections: It is about time. *The Counseling Psychologist, 41*, 1062-1072. doi: 10.1177/0011000013482381

Morgan, R. D., Kroner, D. G., Mills, J. F., Serna, C., & McDonald, B. R. (2013). Dynamic risk assessment: A validation study. *Journal of Criminal Justice*, 31, 115-124.

Wolff, N., Frueh, B. C., Huening, J., Shi, J., Epperson, M. W., Morgan, R. D., Fisher, W. (2013). Looking to practice to inform the next generation of behavioral health and criminal justice interventions. *International Journal of Law & Psychiatry, 36*, 1-10. doi: 10.1016/j.ijlp.2012.11.001

Wolff, N., Morgan, R. D., & Shi, J. (2013). Comparative analysis of attitudes and emotions among inmates: Does mental illness matter? *Criminal Justice and Behavior, 40*, 1092-1108.

Mandracchia, J. T., & Morgan, R. D. (2012). Predicting offenders' criminogenic cognitions with status variables. *Criminal Justice & Behavior, 39*, 5-25. doi: 10.1177/0093854811425453

Morgan, R. D., Flora, D. B., Kroner, D. G., Mills, J. F., Varghese, F., & Steffan, J. S. (2012). Treating offenders with mental illness: A research synthesis. *Law and Human Behavior, 36*, 37-50. doi:10.1007/s10979-011-9271-7

Romani, C. J., Morgan, R. D., Gross, N. R., & McDonald, B. R. (2012). Treating criminal behavior: Is the bang worth the buck? *Psychology, Public Policy and Law, 18*, 144-165. doi: 10.1037/a0024714

Bewley, M. T., & Morgan, R. D. (2011). A national survey of mental health services available to offenders with mental illness: Who is doing what? *Law & Human Behavior, 35*, 351-363. doi:10.1007/s10979-010-9242-4

Mandracchia, J. T., & Morgan, R. D. (2011). Understanding criminals' thinking: Further examination of the Measure of Offender Thinking Styles – Revised. *Assessment, 18*, 442-452.

Morgan, R. D. (2011). If Not Us, Then Who? Presidential Address. *Psychological Services, 8,* 140-150. doi:10.1037/a0023727

Rozycki-Lozano, A. T., Morgan, R. D., Murray, D. D., & Varghese, F. (2011). Prison tattoos as a reflection of the criminal lifestyle. *International Journal of Offender Therapy and Comparative Criminology, 55,* 509-529. doi:10.1177/0306624X10370829

Shaw, L. B., & Morgan, R. D. (2011). Inmate attitudes toward treatment: Mental health service utilization and treatment effects. *Law and Human Behavior, 35,* 249-261. doi:10.1007/s10979-010-9233-5

Wolff, N., Morgan, R. D., Shi, J., Fisher, W., & Huening, J. (2011). Comparative analysis of thinking styles and emotional states of male and female inmates with and without mental disorders. *Psychiatric Services, 62,* 1485-1493.

Mandracchia, J. T., & Morgan, R. D. (2010). The relationship between status variables and criminal thinking in offenders. *Psychological Services, 7,* 27-33. doi:10.1037/a0016194

Morgan, R. D., Fisher, W. H., Duan, N., Mandracchia, J. T., & Murray, D. (2010). Prevalence of criminal thinking among state prison inmates with serious mental illness. *Law & Human Behavior, 34,* 324-336. doi:10.1007/s10979-009-9182-z

Senter, A. W., Morgan, R. D., Serna-McDonald, C., & Bewley, M. (2010). Correctional psychologist burnout, job satisfaction and life satisfaction. *Psychological Services, 7,* 190-201. doi:10.1037/a0020433

Steffan, J. S., Morgan, R. D., Lee, J., & Sellbom, M. (2010). A comparative analysis of MMPI-2 malingering detection models among inmates. *Assessment, 17,* 185-196. doi:10.1177/1073191109359382

Varghese, F. P. Hardin, E. E., Bauer, R., & Morgan, R. D. (2010). Attitudes toward hiring offenders: The roles of criminal history, job qualifications, and race. *International Journal of Offender Therapy and Comparative Criminology, 54,* 769-782. doi:10.1177/0306624X09344960

Miller, T. W., Morgan, R. D., & Wood, J. A. (2009). Tele-practice technology: A model for healthcare delivery to underserved populations. *International Journal of Healthcare Delivery Reform Initiatives, 1,* 55-69. doi:10.4018/jhdri.2009070104

Morgan, R. D. & Cohen, L. M. (2008). Clinical and counseling psychology: Can differences be gleaned from printed recruiting materials? *Training and Education in Professional Psychology, 2,* 156-164. doi:10.1037/1931-3918.2.3.156

Morgan, R. D., Patrick, A. R., & Magaletta, P. R. (2008). Does the use of telemental health alter the treatment experience?: Inmates' perceptions of telemental health vs. face-to-face treatment

modalities. *Journal of Consulting and Clinical Psychology, 76,* 158-162. doi:10.1037/0022-006X.76.1.158

Steffan, J. S., & Morgan, R. D. (2008). Diagnostic accuracy of the MMPI-2 Malingering Discriminant Function Index in the detection of malingering among inmates. *Journal of Personality Assessment, 90,* 392-398. doi:10.1080/00223890802108204

Ax, R. K., Fagan, T. J., Magaletta, P. R., Morgan, R. D., Nussbaum, D., & White, T. W. (2007). Innovations in correctional assessment and treatment [Special issue]. *Criminal Justice and Behavior, 34,* 893-905. doi:10.1177/0093854807301555

Beer, A. M., Morgan, R. D., Garland, J. T., & Spanierman, L. B. (2007). The role of romantic/intimate relationships in the well-being of incarcerated females. *Psychological Services, 4,* 250-261. doi:10.1037/1541-1559.4.4.250

Kroner, D. G., Mills, J. F., & Morgan, R. D. (2007). Underreporting of Crime-Related Content and the prediction of criminal recidivism among violent offenders. *Psychological Services, 4,* 85-95. doi:10.1037/1541-1559.4.2.85

Magaletta, P. R., Morgan, R. D., Reitzel, L. R., & Innes, C. A. (2007). Toward the one: Strengthening behavioral sciences research in corrections [Special issue]. *Criminal Justice and Behavior, 34,* 933-944. doi:10.1177/0093854807301562

Mandracchia, J. T., Morgan, R. D., Garos, S., & Garland, J. T. (2007). Inmate thinking patterns: An empirical investigation. *Criminal Justice & Behavior, 34,* 1029-1043. doi:10.1177/0093854807301788

Morgan, R. D., Beer, A. M., Fitzgerald, K. L., & Mandracchia, J. T. (2007). Graduate students' experiences, interests, and attitudes towards correctional/forensic psychology. *Criminal Justice and Behavior, 34,* 96-107. doi:10.1177/0093854806289831

Morgan, R. D., Steffan, J. S., Shaw, L., & Wilson, S. (2007). Needs for and barriers to correctional mental health services: Inmate perceptions. *Psychiatric Services, 58,* 1181-1186. doi:10.1176/appi.ps.58.9.1181

Steffan, J. S., Kroner, D. G, & Morgan, R. D. (2007). Effect of symptom information and intelligence in dissimulation: An examination of faking response styles by inmates on the Basic Personality Inventory. *Assessment, 14,* 1-13. doi:10.1177/1073191106295404

Wormith, J. S., Althouse, R., Reitzel, L. R., Simpson, M., Fagan, T. J., & Morgan, R. D. (2007). The rehabilitation and reintegration of offenders: The current landscape and some future directions for correctional psychology [Special issue]. *Criminal Justice and Behavior, 34,* 879-892. doi:10.1177/0093854807301552

DiLillo, D., DeGue, S., Cohen, L. M., & Morgan, R. D. (2006). The Path to Licensure for Academic Psychologists: How Tough is the Road? *Professional Psychology: Research and Practice, 37,* 567-586. doi:10.1037/0735-7028.37.5.567

Kroner, D. G., Mills, J. F., & Morgan, R. D. (2006). Socially desirable responding and the measurement of violent and criminal risk: Self-report validity. *Journal of Forensic Psychology Practice, 6,* 27-42. doi:10.1300/J158v06n04_02

Miller, T. W., DeLeon, P. H., Morgan, R. D., Penk, W. E., & Magaletta, P. R. (2006). The public sector psychologist with 2020 Vision. *Professional Psychology: Research and Practice, 37,* 531-538. doi:10.1037/0735-7028.37.5.531

Morgan, R. D., Kroner, D. G., & Mills, J. F (2006). Group Psychotherapy in Prison: Facilitating Change Inside the Walls. *Journal of Contemporary Psychotherapy, 36,* 137-144. doi:10.1007/BF02729057

Garland, J. T., Morgan, R. D., & Beer, A. M. (2005). Impact of time in prison and security level on inmates' sexual attitude, behaivor, and identity. *Psychological Services, 2,* 151-162. doi:10.1037/1541-1559.2.2.151

Steffan, J. S., Morgan, R. D., Cicerello, A. & Birmingham, D. (2005). Utility of the MCMI-3 to detect response bias among forensic patients. *Journal of Forensic Psychology, 23,* 43-58.

Morgan, R. D., Garland, J. T., Rozycki, A. T., Reich, D. A., & Wilson, S (2005). Group Therapy Goals: A Comparison of Group Therapy Providers and Male Inmates. *The Journal for Specialists in Group Work, 30,* 159-172. doi:10.1080/01933920590926011

Morgan, R. D., Rozycki, A. T., & Wilson, S. (2004). Inmate perceptions of mental health services. *Professional Psychology: Research and Practice, 35,* 389-396. doi:10.1037/0735-7028.35.4.389

Steffan, J. S., Clopton, J. R., & Morgan, R. D. (2003). An MMPI-2 scale to detect malingered depression (Md Scale). *Assessment, 10,* 382-392. doi:10.1177/1073191103259548

Cohen, L. M., Morgan, R. D., DiLillo, D., & Flores, L. Y. (2003). Why was my major professor so busy? Establishing an academic career while pursuing applied work. *Professional Psychology: Research and Practice, 34,* 88-94. doi:10.1037//0735-7028.34.1.88

Morgan, R. D., & Flora, D. B. (2002). Group psychotherapy with incarcerated offenders: A research synthesis. *Group Dynamics: Theory, Research, and Practice, 6,* 203-218. doi:10.1037//1089-2699.6.3.203

Morgan, R. D., & Winterowd, C. L. (2002). Interpersonal process-oriented group psychotherapy with offender populations. *International Journal of Offender Therapy and Comparative Criminology, 46,* 466-482. doi:10.1177/0306624X02464008

Ax, R. K., & Morgan, R. D. (2002). Internship training opportunities in correctional psychology: A comparison of settings. *Criminal Justice and Behavior, 29,* 332-347. doi:10.1177/0093854802029003005

Morgan, R. D., Van Haveren, R. A., & Pearson, C. A. (2002). Correctional officer burnout: Further analyses. *Criminal Justice and Behavior, 29,* 144-160. doi:10.1177/0093854802029002002

Winterowd, C. L., Morgan, R. D., & Ferrell, S. W. (2001). Principal component analysis of important goals for group counseling and psychotherapy with male inmates. *Journal for Specialists in Group Work, 26,* 406-417. doi:10.1080/01933920108413788

Ferrell, S. W., Morgan, R. D., & Winterowd, C. L. (2000). Job satisfaction of mental health professionals providing group psychotherapy in state correctional facilities. *International Journal of Offender Therapy and Comparative Criminology, 44,* 232-241. doi:10.1177/0306624X00442008

Morgan, R. D., Olson, K., Krueger, M. R., Schellenberg, R. P., & Jackson, T. J. (2000). Do the DSM decision trees improve diagnostic ability? *Journal of Clinical Psychology, 56,* 73-88. doi:10.1002/(SICI)1097-4679(200001)56:1<73::AID-JCLP7>3.0.CO;2-I

Morgan, R. D., Ferrell, S. W., & Winterowd, C. L. (1999). Therapists' perceptions of important therapeutic factors in psychotherapy groups for male inmates in state correctional facilities. *Small Group Research, 30,* 712-729. doi:10.1177/104649649903000603

Morgan, R. D., Winterowd, C. L., & Ferrell, S. W. (1999). A national survey of group psychotherapy services in correctional facilities. *Professional Psychology: Research and Practice, 30,* 600-606. doi:10.1037//0735-7028.30.6.600

Morgan, R. D., Winterowd, C. L., & Fuqua, D. R. (1999). The efficacy of an integrated theoretical approach to group psychotherapy for male inmates. *Journal of Contemporary Psychotherapy, 29,* 203-222. doi: 10.1023/A:1021969118113

**Books**

Kuther, T. L., & Morgan, R. D. (2012). *Careers in Psychology: Opportunities in a Changing World* (4th ed.). Pacific Grove, CA: Wadsworth/Thomas Learning.

Mills, J. F., Kroner, D. G., & Morgan, R. D. (2011). *The clinician's guide to violence risk assessment.* New York: Guilford Publications.

Kuther, T. L., & Morgan, R. D. (2010). *Careers in Psychology: Opportunities in a Changing World* (3rd ed.). Pacific Grove, CA: Wadsworth/Thomas Learning.

Kuther, T. L., & Morgan, R. D. (2007). *Careers in Psychology: Opportunities in a Changing World* (2nd ed.). Pacific Grove, CA: Wadsworth/Thomas Learning.

Morgan, R. D., Kuther, T. L., & Habben, C. (Eds.). (2005). *Life After Graduate School in Psychology: Insider's Advice from New Psychologists.* New York: Psychology Press.

Kuther, T. L., & Morgan, R. D. (2004). *Careers in Psychology: Opportunities in a Changing World.* Pacific Grove, CA: Wadsworth/Thomas Learning.

## Books in Progress

Morgan, R. D., Kroner, D. G., & Mills, J. F. (invited book under contract). *Treating the Mentally Disordered Offender: A Model and Guide for Empirically Supported Practice.* New York: Oxford University Press.

## Chapters in Books

Kroner, D. G., & Morgan, R. D. (2014). An overview of strategies for the assessment and treatment of criminal thinking. In R. C. Tafrate & D. Mitchell (Eds.), *Forensic CBT: A Handbook for Clinical Practice.* Hoboken, NJ: Wiley-Blackwell.

Morgan, R. D., Kroner, D. G., Mills, J. F., & Batastini, A. B. (2014). Treating criminal offenders. In I. B.Weiner & R. K. Otto (Eds.) *Handbook of Forensic Psychology* (pp. 795-837). Hoboken, NJ: John Wiley & Sons.

Morgan, R. D., Romani, C. J., & Gross, N. G. (2014). Group work with offenders and mandated clients. In J. L. DeLucia-Waack, C. Kalodner, & M. Riva (Eds.), *The Handbook of Group Counseling and Psychotherapy* (pp. 441-449). Thousand Oaks, CA: Sage Publications.

Batastini, A. B., McDonald, B., & Morgan, R. D. (2013). Videoteleconferencing in forensic and correctional practice. In K. Myers & C. Turvey (Eds.) *Telemental Health: Clinical, Technical and Administrative Foundations for Evidence-Based Practice* (pp, 251-271). Kidlington, United Kingdom: Elsevier.

Bauer, R. L., Morgan, R. D., & Mandracchia, J. T., (2010). Offenders with severe and persistent mental illness. In T. J. Fagan & R. K. Ax (Eds.), *Correctional Mental Health* (pp. 189-212). Thousand Oaks, CA: Sage Publications.

Miller, T. W., Morgan, R. D., & Wood, J. A. (2009). A telehealth technology model for information science in rural settings. In A. Dwivedi (Ed.), Handbook of Research on IT Management and Clinical Data Administration in Healthcare. Hershey, PA: IGI Global.

Senter, A., Morgan, R. D., & Mandracchia, J. T. (2007). Differing perspectives: Correctional systems in non-western countries. In R. K. Ax and J. T. Fagan (Eds.). *Corrections, Mental Health, and Social Policy: International Perspectives* (pp. 320-334). Springfield, IL: Charles C. Thomas.

Flores, L. Y., & Morgan, R. D. (2005). Doctoral institutions: On the other side of the fence. In R. D. Morgan, T. L. Kuther, & C. Habben (Eds.), *Life After Graduate School in Psychology: Insider's Advice from New Psychologists* (pp. 29-44). New York: Psychology Press.

Kuther, T. L., Habben, C. J., & Morgan, R. D. (2005). Today's new psychologist: Traditional and emerging career paths. In R. D. Morgan, T. L. Kuther, & C. Habben (Eds.), *Life After Graduate School in Psychology: Insider's Advice from New Psychologists* (pp. 1-11). New York: Psychology Press.

Morgan, R. D., Habben, C. J., & Kuther, T. L. (2005). Our future is up to us: The new psychologist's role in shaping the profession. In R. D. Morgan, T. L. Kuther, & C. Habben (Eds.), *Life After Graduate School in Psychology: Insider's Advice from New Psychologists* (pp. 329-332). New York: Psychology Press.

Morgan, R. D. (2004). Groups with offenders and mandated clients. In J. L. DeLucia-Waack, D. Gerrity, C. Kalodner, & M. Riva (Eds.), *Handbook of Group Counseling and Psychotherapy* (pp. 388-400). Thousand Oaks, CA: Sage Publications.

Morgan, R. D. (2003). Basic mental health services: Services and issues. In T. Fagan & R. K. Ax (Eds.), *Correctional mental health handbook* (pp. 59-71). Thousand Oaks, CA: Sage Publications.

**Non-Refereed Publications**

Van Horn, S. A. & Morgan, R. D. (in press). Mental health care in the justice system. In A. Wenzel (Ed.), Encyclopedia of Abnormal and Clinical Psychology. Thousand Oaks: Sage.

Morgan, R. D., Kroner, D. G., & Mills, J. F. (2012). *Re-entry: Dynamic risk assessment* (Report No. 238075). Washington, DC: National Institute of Justice.

Epperson, M., Wolff, N., Morgan, R., Fisher, W., Frueh, B. C., & Huening, J. (2011). *The next generation of behavioral health and criminal justice interventions: Improving outcomes by improving interventions*. Center for Behavioral Health Services & Criminal Justice Research.

Dvoskin, J. A., & Morgan, R. D. (2010). Correctional psychology. In I. Weiner, & W. E. Craighead (Eds.), *Corsini Encyclopedia of Psychology* (Vol. 1, pp. 417-420). New York: Wiley.

Community Corrections Research Guide Advisory Group (2009). *Improving outcomes for people with mental illness under community supervision*. New York: Council of State Governments Justice Center.

Magaletta, P. R., McLearen, A. M., & Morgan, R. D. (2007). Framing evidence for mental health services research in corrections. *Corrections Today, 69*, 38-40.

Morgan, R. D. (2007). Foreword [Special issue]. *Criminal Justice and Behavior, 34*, 877-878.

Steffan, J. S., & Morgan, R. D. (2005). Meeting the needs of mentally ill offenders: Inmate service utilization. *Corrections Today, 67,* 38 - 41, 53.

## Conference Presentations

Batastini, A. B., Bolanos, A., & Morgan, R. D. (2014, August). *Employer Attitudes toward Hiring Applicants with Mental Illness and Criminal Justice Involvement: A Follow-Up Study.* Poster presented at the annual meeting of the American Psychological Association Convention, Washington, D.C.

McDonald, B. R., Morgan, R. D., Campion, K., & Bolanos, A. (August 2014). *The Attorney-Client Working Relationship: Videoconferencing versus In-Person Modalities.* Poster presented at the annual convention of the American Psychological Association, Washington, D.C.

White, K. B. & Morgan, R. D. (2014, August). *Trauma, Criminal Risk, and Treatment Outcomes in a Correctional Sample.* Poster session presented at the annual convention of the American Psychological Association, Washington, DC.

Batastini, A. B., King, C. M., McDaniel, B., MacLean, N., Van Horn, S., & Morgan, R. D. (2014, March). *Effectiveness of Telepsychology in Correctional and Forensic Practice: A Research Synthesis and Meta-Analysis.* Paper presented at the annual meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Morgan, R. D., Van Horn, S. A., MacLean, N., Bolanos, A., Batastini, A. B., Gray, A., & Mills, J. F. (2014, March). *Administrative Segregation: Is It a Harmful Correctional Practice?* Poster presented at the annual meeting of the American Psychology-Law Society, New Orleans, Louisiana.

White, K. B. & Morgan, R. D. (2014, March). *Readiness for Change, Personal Growth Initiative, and Criminal Risk in a Correctional Sample.* Poster presented at the annual meeting of the American Psychology-Law Society, New Orleans, Louisiana.

Morgan, R. D., & Kroner, D. G., (2013, October). *An evidenced-based approach for Treating inmates with mental illness.* Paper presented at the annual meeting of the National Commission on Correctional Health Care, Nashville, TN.

Morgan, R. D., Kroner, D. G., & Mills, J. F. (2013, July). *An evidenced-based approach for Treatment of inmates with mental illness.* Paper presented at the annual meeting of the National Commission on Correctional Mental Health Care, Las Vegas, NV.

Gross, N. R., Morgan, R. D., & Piper, M. A. (2013). *Variables predictive of criminal justice involvement in community mental health consumers.* Poster presented at the 2013 American Psychological Association Convention, Honolulu, HI.

Batastini, A. B., Morgan, R. D., Mills, J. F., Kroner, D. G., & Moor, K. (2013, March). *Changing Problematic Associates: A Preliminary Evaluation of a Treatment Program for Offenders with Mental Illness.* Poster session presented at the annual American Psychology-Law Society Conference, Portland, Oregon.

Gross, N. R., & Morgan, R. D. (2013). Criminal thinking in a community mental health sample: Effects on treatment engagement, psychiatric recovery, and criminality. In R. D. Morgan (Chair), *Mental illness in criminal justice settings: Identifying needs and custodial concerns.* Symposium presented at the 2013 American Psychology and Law Society Convention, Portland, OR.

Batastini, A. B., Bolanos, A., Dean, T., Moor, K., Bewley, M., & Morgan, R. D. (2012, August). *Employer Bias in Hiring Mentally Ill and Criminal Justice-Involved Applicants: The Impact of Education and Experience.* Poster session presented at the annual American Psychological Association Convention, Orlando, Florida.

Gross, N. R., Morgan, R. D., & Mitchell, S. M. (2012, August). *An Exploratory Analysis of the Relationship of Criminal Thinking and Psychiatric Symptomology with the Number of Lifetime Psychiatric Hospitalizations.* Poster presented at the Annual Convention of the American Psychological Association, Orlando, FL.

Gross N. R., Mitchell, S. M., Gutierrez, M. N., & Morgan, R. D. (2011, August). *Criminal thinking and psychiatric presentation: A comparison of offenders with mental illness and psychiatric patients.* Poster presented at the annual convention of the American Psychological Association, Washington DC.

Mandracchia, J. T., Gonzalez, R., & Morgan, R. D. (August, 2011). *Predicting offenders' criminogenic cognitions with status variables.* Poster presented at the annual convention of the American Psychological Association, Washington DC.

McDonald, B., & Morgan, R. D. (August 2011). *Enhancing homework compliance in correctional psychotherapy: An empirical investigation.* Poster presented at the annual convention of the American Psychological Association, Washington, D.C.

Mitchell, S.M., Romani, C.J., Morgan, R.D. (2011, August). *Criminal thinking: a link between self-injurious behavior and mood disorders in offenders with mental illness.* Poster presented at the annual convention of the American Psychological Association, Washington, D.C.

Morgan, R.D. (2011, August). Discussant. In R. D. Morgan (Chair), *Offender treatment programs: Past, present and future directions.* Symposium conducted at the annual convention of the American Psychological Association, Washington DC.

Romani, C. J., Mandraccia, J., T., & Morgan, R. D. (2011, August). *Does psychiatric diagnosis help us understand criminal thinking in offenders with severe mental illness: An exploratory cluster*

*analysis*. Poster presented at the annual convention of the American Psychological Association, Washington D.C.

Romani, C. J., Morgan, R. D., Gross, N.R., & McDonald, B, R. (2011, August). The not-so-hidden value of appropriate treatments: What the literature hasn't told you about R-N-R. In R. D. Morgan (Chair) *Offender treatment programs: Past, present, and future directions*. Symposium conducted at the annual convention of the American Psychological Association, Washington, D.C.

Serna, C., Bolanos, A., Murray, D., Porras, C., Rodriguez, A., & Morgan, R. D. (August 2011). *Criminal thinking: A state or trait process*. Poster presented at the annual convention of the American Psychological Association, Washington D.C.

Morgan, R. D (June, 2011). Dynamic risk assessment: An overview. In D. G. Kroner (Chair), *Dynamic risk assessment: Examination of a 6-wave study with outcome data*. Symposium conducted at the Second North American Correctional and Criminal Justice Psychology Conference, Toronto, Canada.

Morgan, R. D., Kroner, D. G., Mills, J. F., & Bauer, R. (June, 2011). Changing lives and changing outcomes: A treatment outcome study for offenders with mental illness. In S. M. Manchak (Chair), *Moving beyond "What works?" to "How?" and "For whom?": A closer look at interventions for offenders with mental illness*. Symposium conducted at the Second North American Correctional and Criminal Justice Psychology Conference, Toronto, Canada.

Romani, C. J., Morgan, R. D., Gross, N.R., & McDonald, B, R. (2011, June). The not-so-hidden value of appropriate treatments: What the literature hasn't told you about R-N-R. In J. A. Dvoskin (Chair) *Offender treatment programs: Past, present, and future directions*. Symposium conducted at the North American Correctional and Criminal Justice Psychology Conference, Toronto, ON.

Morgan, R. D., Fisher, W., & Wolff, N. (March, 2011). Offenders with mental illness: Are they mad, bad or both? In V.A. Hiday (Chair), *Reducing recidivism among mentally ill offenders*. Symposium conducted at the annual meeting of the American Psychology-Law Society, Miami, Florida.

Bewley, M. T., Steffan J. S., Morgan, R. D., Sellbom, M., & Jane, A. (August 2010). *Detecting the sophistication among depressed malingerers using the Md Scale*. Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Day, L. E., Mitchell, S. M., Davenport, K. L., Serna-McDonald, C. C., & Morgan, R. D. (August 2010). *Offenders' with mental illness refusal of mental health treatment*. Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Gross, N. R., Mills, J. F., Kroner, D. G., Steffan, J. S., Rodriguez, A., & Morgan, R. D. (August 2010). *Depression, problem solving, and hopelessness: A model for suicide.* Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Mandracchia, J. T., Shaw, L. B., To, Y. M., & Morgan, R. D. (August 2010). *Attitudes toward criminal justice issues by race, gender, and education.* Poster presented at the annual convention of the American Psychological Association, San Diego, California.

McDonald, B. R., Mills, J. F., Morgan, R. D., Kroner, D. G., Steffan, J. S., & Bewley, M. T. (August 2010). *Coping with negative affect: Are coping strategies specific to emotion?* Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Romani, C. J., Morgan, R. D., Gutierrez, M. N., Gross, N. R., & McDonald, B. R. (August 2010). *Does treatment provide a financial incentive to correctional institutions?* Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Serna-McDonald, C. C. & Morgan, R. D. (August 2010). *Effectiveness of treatment for offenders with mental illness.* Poster presented at the annual convention of the American Psychological Association, San Diego, California.

Kroner, D. G., Morgan, R. D., Mills, J. F., Serna, C., Bewley, M. T. (March 2010). *Dynamic risk Assessment: Can we get there?* Paper presented at the annual convention of the American Psychology-Law Society, Vancouver, Canada.

Morgan, R. D., Kroner, D. G., Mills, J. F., Bauer, R. L., & Serna, C. (March 2010). *Changing Lives and Changing Outcomes*: An examination of treatment fidelity and effectiveness. Paper presented at the annual convention of the American Psychology-Law Society, Vancouver, Canada.

Morgan, R. D., Kroner, D. G., Mills, J. F., Serna, C., & Bewley, M. T. (August 2009). Can We Use Dynamic Risk to Predict Future Criminal Behavior? In Garcia, M. (Moderator). *Answering Questions about Prisoner Reentry.* Workshop presented at the annual convention of the American Probation and Parole Association, Anaheim, CA.

Bewley, M. T, Nillson, K., Ezell, J., Day, L., Morgan, R. (August 2009). *National Survey of the Description of Services Provided to Mentally Ill Offenders in Prison.* Poster presented at the annual convention of the American Psychological Association, Toronto, Canada.

Morgan, R. D. (August 2009). Discussant. In Varghese, F.P. & Medlock, E. (Co-Chairs). *Post-release offender employment: Barriers, interventions, and implications for social justice.* Symposium presented at the annual convention of the American Psychological Association, Toronto, Canada.

Morgan, R. D., Duan, N., Fisher, W., Romani, C., Mandracchia, J., Murray, D. (August 2009) *Criminal Thinking of Offenders with Mental Illness*. Poster presented at the annual convention of the American Psychological Association, Toronto, Canada.

Morgan, R. D., Kroner, D. G., Mills, J. F., Bauer, R., & Serna, C. (August 2009). *Dynamic Risk Assessment in Criminal Justice: Can We Get There?* Poster presented at the annual convention of the American Psychological Association, Toronto, Canada.

Morgan, R. D., Duan, N., Fisher, W., Romani, C. J., Mandracchia, J. T., & Murray, D. (August 2009). *Criminal Thinking of Offenders with Mental Illness*. Poster presented at the annual convention of the American Psychological Association, Toronto, Canada.

Murray, D., Porras, C., Serna, C., Rodriguez, A., & Morgan, R. (August 2009). *Criminal Thinking: A Static or Dynamic Process*. Poster presented at the annual convention of the American Psychological Association, Toronto, Canada.

Varghese, F.P., Hardin, E.E., & Morgan, R.D. (August 2009). Factors Influencing Offender Employability. In Varghese, F.P. & Medlock, E. (Co-Chairs). *Post-release offender employment: Barriers, interventions, and implications for social justice*. Symposium presented at the annual convention of the American Psychological Association, Toronto, Canada.

Morgan, R. D. (March 2009). Changing Lives and Changing Outcomes: Treatment targets and specified mechanisms of change. In R. D. Morgan (Chair), *Treating the mentally disordered offender: A model and guide for empirically supported practice*. Symposium presented at the annual meeting of the American Psychology-Law Society, San Antonio, Texas.

Bewley, M. T. & Morgan, R. D. (March 2009). *National survey of mental health services for mentally ill offenders in prison*. Poster presented at the annual meeting of the American Psychology-Law Society, San Antonio, Texas.

Mandracchia, J. T. & Morgan, R. D. (August 2008). *Inmate Thinking Patterns: An Integrative Approach*. Poster presented at the annual convention of the American Psychological Association, Boston, MA.

Shaw, L., Morgan R. D., & Bewley, M. (August 2008). *Inmate Characteristics and Mental Health Services*. Poster presented at APA Conference. Boston, MA.

Mandracchia, J. T. & Morgan, R. D. (May 2007). *Criminal Thinking: Past Perspectives and Future Directions*. Concurrent Session presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, Missouri.

Bewley, M., Shaw, L., & Morgan R. D. (April 2008). *Diagnosis, Behavior, and Risk for Recidivism*. Poster presented at the MHCC Symposium, Kansas City, MO.

Mandracchia, J. T., Bewley, M., Murray, D., & Morgan, R. D. (March 2008). *Towards Reducing Criminal Behavior: Using the MOTS-R to Evaluate the Dynamic Nature of Criminal Thinking.* Poster presented at the International Counseling Psychology Conference, Chicago, Illinois.

Varghese, F.P., Hardin, E.E., & Morgan, R.D. (2008, March). *The employability of inmates using social cognitive career theory.* Poster presented at the International Counseling Psychology Conference, Chicago, Illinois.

Morgan, R. D., Bauer, R. L., Fisher, W., Duan, N., Mandracchia, J. T., Murray, D., Gaines, M. V., & Varghese, F. P. (2008, March). *Predicting disciplinary infractions among mentally disordered offenders.* Poster presented at the annual meeting of the American Psychology-Law Society, Jacksonville, FL.

Mandracchia, J. T. & Morgan, R. D. (2008, March). *Towards Reducing Criminal Behavior: Using the MOTS-R to Evaluate the Dynamic Nature of Criminal Thinking.* Poster presented at the International Counseling Psychology Conference, Chicago, Illinois.

Gaines, M.V., Giles, C.L., Morgan, R.D., & Steffan, J. (2007, August). *The Combined Use of the M-FAST and PAI in the Detection of Malingering among Inmates.* Poster presented at the annual meeting of the American Psychology Association, San Francisco, California.

Magaletta, P., Morgan, R. D., Reitzel, L, & Innes, C. (2007, August). Toward the one: Strengthening behavioral sciences research in corrections. In R. D. Morgan (Chair), *Developing a research agenda in correctional psychology.* Symposium presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Morgan, R. D., Duan, N., Fisher, W. H., Mandracchia, J. T., Murray, D., Rodriguez, A., (2007, August). *Criminal thinking and attitudes in mentally disordered offenders.* Poster presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Morgan, R. D., Flora, D. B., Kroner, D. G., Mills, J., Varghese, F., & Steffan, J. S. (2007, August). Treatment of mentally disordered offenders: A research synthesis. In D.G. Kroner and R.D. Morgan (Co-Chairs), *Mentally disordered offenders: A special population requiring special attention.* Symposium presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Nussbaum, D., Ax, R. K., Fagan, T., Magaletta, P., & Morgan, R. D. (2007, August). Innovations in correctional assessment and treatment. In R. D. Morgan (Chair), *Developing a research agenda in correctional psychology.* Symposium presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Wormith, J., Althouse, R., Reitzel, L., Fagan, T., & Morgan, R. D. (2007, August). The rehabilitation and reintegration of offenders: The current landscape and some future directions for correctional psychology. In R. D. Morgan (Chair), *Developing a research agenda in*

*correctional psychology*. Symposium presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Mandracchia, J. T., Varghese, F. V., Morgan, R. D., & Jackson, C. T. (2007, June). Reliability and Validity of the Depression, Hopelessness, and Suicide Screening Form in a Clinical Population. In J. Mills (Chair) *The Depression Hopelessness And Suicide Screening Form: Validity and generalizability to offender, student and clinical samples*. Symposium presented at the North American Correctional and Criminal Justice Psychology Conference, Ottawa, Canada.

Mandracchia, J. T., & Morgan, R. D. (2007, June). Graduate school training in correctional and forensic psychology. In R. D. Morgan (Chair), *Training in correctional and forensic psychology*. Symposium presented at the North American Correctional and Criminal Justice Psychology Conference, Ottawa, Ontario.

Morgan, R. D. (2007, July). Treatment of individuals with mental illness in a state prison. In J. Draine (Chair), *Mental illness and treatment during and after incarceration*. Linked session presented at the Nineteenth NIMH Conference on Mental Health Services Research, Washington, DC.

Morgan, R. D.., Flora, D., Kroner, D. G., Mills, J. F., Varghese, J. P., & Steffan, J. S. (2007, June). *Treatment of mentally disordered offenders: A research synthesis*. Paper presented at the North American Correctional and Criminal Justice Psychology Conference, Ottawa, Canada.

Morgan, R. D., Gaines, M. V., Fisher, W., Duan, N., Mandracchia, J. T., Murray, D., Rodriguez, A., Bauer, R. L., & Varghese, F. P., (2007, June). *Tailoring services for mentally ill offenders*. Poster presented at the North American Correctional and Criminal Justice Psychology Conference, Ottawa, Canada.

Mandracchia, J. T., Morgan, R. D., Garos, S., & Garland, J. T. (2007, April). *Status Variables and Criminal Thinking in Offenders*. Poster presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, Missouri.

Mandracchia, J. T., Shaw, L., Morgan, R. D. (2007, February). *Effects of Education on Attitudes towards Criminal Justice Issues*. Paper presented at the annual meeting of the Southwest Educational Research Association, San Antonio, Texas.

Mandracchia, J. T., Morgan, R. D., Garos, S., Garland, J. T., & Rodriguez, A. (2006, August). *Inmate thinking patterns: An empirical investigation*. Poster presented at the annual meeting of the American Psychological Association, New Orleans, Louisiana.

Morgan, R. D., Steffan, J. S., Shaw, L. B., & Wilson, M. S. (2006, August). *Needs and barriers for correctional mental health services: Inmate perceptions*. Poster presented at the annual convention of the American Psychological Association, New Orleans, Louisiana.

Senter, A., & Morgan, R. D. (2006, August). *Public Service Psychologist Burnout, Job Satisfaction, and Life Satisfaction*. Poster presented at the annual meeting of the American Psychological Association, New Orleans, LA.

Senter, W. A., & Morgan, R. D. (2006, May). *Working in the Big House: Correctional Psychologist, Burnout, Job Satisfaction, and Life Satisfaction*. Poster presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, MO.

Rodriguez, A., Steffan, J. S. Lopez, M. J., & Morgan, R. D. (2006, May). *Detecting malingering among offenders with the MCMI-3*. Poster presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, MO.

Varghese, F. P., Hardin, E. E., & Morgan, R. D. (2006, May). Understanding the factors that affect employability of soon-to-be released prisoners. Poster Presented at the annual meeting of the Mental Health and Corrections Consortium, Kansas City, Missouri.

Morgan, R. D. (2005, August). Discussant. In R. Morgan (Chair), Associates and Adult Criminal Behavior: Theory, Research, Treatment, and Evaluation. Symposium conducted at the annual meeting of the American Psychological Association, Washington, D.C.

Morgan, R. D., & Patrick, A. R. (2005, August). Offender perceptions of telemedicine vs. face-to-face psychotherapy. Poster presented at the annual meeting of the American Psychological Association, Washington, D.C.

Steffan, J. S., & Morgan, R. D. (2005, August). *Examination of a new MMPI-2 scale to detect malingered depression*. Poster presented at the annual meeting of the American Psychological Association, Washington, D.C.

Steffan, J. S., Morgan, R. D., & Lopez, M. J. (2005, August). *Detecting inmates malingering: Comparison of the MMPI-2, PAI, and MCMI-3*. Poster presented at the annual meeting of the American Psychological Association, Washington, D.C.

Steffan, J. S., & Morgan, R. D. (2005, June). Detection of malingered depressive symptoms with multiscale inventories: An analysis of the MMPI-2, PAI, and MCMI-3 with correctional inmates. In F. Rudmin (Chair), *Psychometric detection of feigned (faked, malingered) depression*. Conversation session presented at the annual meeting of the Canadian Psychological Association, Montreal, Ontario, Canada.

Steffan, J. S., Denney, D., & Morgan, R. D. (2005, April). *Reducing institutional infractions: An analysis of the CODE treatment program*. Poster session presented at the Mental Health in Corrections Consortium, Kansas City, Missouri.

DeGue, S., Fortier, M. A., DiLillo, D., Cohen, L. M., & Morgan, R. D. (November 2004). *Issues and Obstacles in the Licensure Process for Early Career Academic Psychologists*. Poster

presented at the 38th annual meeting of the Association for the Advancement of Behavioral Therapy, New Orleans, LA.

Beer, A. M., Morgan, R. D., & Garland, J. T. (2004, July/August). *The role of romantic/intimate relationships in the well-being of incarcerated females.* Poster presented at the annual meeting of the American Psychological Association, Honolulu, HI.

Morgan, R. D. (2004, July/August). Training psychologists for public service psychology in 2020. In R. D. Kerns and T. W. Miller (Chairs), *Future of Psychology in the Public Sector: Innovations and Challenges for 2020.* Symposium conducted at the annual meeting of the American Psychological Association, Honolulu, HI.

Morgan, R. D., Beer, A. M., Fitzgerald, K. L., & Mandracchia, J. T. (2004, July/August). *Graduate student's experiences, interests, and attitudes towards correctional/forensic psychology.* Poster presented at the annual meeting of the American Psychological Association, Honolulu, HI.

Patrick, A. R., Morgan, R. D., & Garland, J. T. (2004, July/August). Inmate perceptions of telepsychology and telepsychiatry. In R. D. Morgan (Chair), *Treatment Behind Bars: Innovative Strategies.* Symposium conducted at the annual meeting of the American Psychological Association, Honolulu, HI.

Kroner, D. G., Mills, J. F., Morgan, R. D. & Mandracchia, J. T. (2004, April). *Training correctional mental health professional's in suicide prevention.* Concurrent session (2 hours) presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, MO.

Steffan, J. S., Cicerello, A. R., Birmingham, D. L., Morgan, R. D., & Mandracchia, J. T. (2004, April). *Sensitivity of the MCMI – 3 to response bias among forensic patients.* Poster presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, Missouri.

Steffan, J. S., Kroner, D. G., & Morgan, R. D. (2004, April). *Detecting malingering or faking good by inmates on the Basic Personality Inventory.* Poster presented at the annual meeting of the Mental Health in Corrections Consortium, Kansas City, MO.

Garland J. T., Morgan, R. D., & Beer, A. M. (2003, November). *Correctional Variables as Predictors of Inmate Sexuality Shifts.* Poster presented at the annual meeting of the American Association of Behavioral Therapy, Boston, MA.

Beer, A. M., Garland, J. T., & Morgan, R. D. (2003, August). Romantic/Intimate Relationships and the Well-being of Incarcerated Females. In R. D. Morgan (Chair), *Inmate sexuality and relationships: Before, during, and after incarceration.* Symposium conducted at the annual meeting of the American Psychological Association, Toronto, Canada.

Garland, J. T., Beer, A. M., & Morgan, R. D. (2003, August). Length of Incarceration and Security Level: Effects on Inmate Sexuality. In R. D. Morgan (Chair), *Inmate sexuality and*

*relationships: Before, during, and after incarceration.* Symposium conducted at the annual meeting of the American Psychological Association, Toronto, Canada.

Morgan, R. D., & Cohen, L. M. (2003, August). *Counseling and Clinical Psychology: Are We Training Students Differently?* Poster presented at the annual meeting of the American Psychological Association, Toronto, Canada.

Rozycki, A. T. & Morgan, R. D (2003, August). Transition into Adulthood: The Experiences of Mexican Americans and White Americans. Poster presented at the annual meeting of the American Psychological Association, Toronto, Canada.

Steffan, J. S., Clopton, J. R., & Morgan, R. D. (2002, November). *An MMPI-2 scale to detect malingering of depression.* Paper presented at the annual meeting of the Texas Psychological Association, San Antonio, TX.

Morgan, R. D. (2002, August). What works? Measuring and identifying correctional treatment programs that work. In R. K. Ax (Chair), *Psychology behind bars: Addressing mental health needs.* Symposium conducted at the annual meeting of the American Psychological Association, Chicago, IL.

Morgan, R. D., Rozycki, A. T., Garland, J. T., Reich, D., & Wilson, S. (2002, August). *Treatment goals in group work with inmates.* Poster session presented at the annual meeting of the American Psychological Association, Chicago, IL.

Morgan, R. D., Wilson, S., & Rozycki, A. T. (2001, August). *Inmate perceptions of mental health services.* Poster session presented at the annual meeting of the American Psychological Association, San Francisco, CA.

Birmingham, D., & Morgan, R. D. (2001, August). Helping police manage Type III stress. In S.Holton (Chair), *Law enforcement and stress: Crossing the blue line.* Symposium conducted at the annual meeting of the American Psychological Association, San Francisco, CA.

Morgan, R. D. (2000, August). Academic training opportunities for professional psychologists. In J. M. Cantor (Chair), *Training in psychology: Students' needs, current opportunities, and academic alternatives.* Symposium conducted at the annual meeting of the American Psychological Association, Washington, D.C.

Morgan, R. D. (2000, August). *The efficacy of an integrative group psychotherapy program for inmates.* Paper presented at the annual meeting of the American Psychological Association, Washington, D.C.

Flora, D. B., & Morgan, R. D. (2000, August). *Group psychotherapy with incarcerated offenders: A meta-analysis.* Poster session presented at the annual meeting of the American Psychological Association, Washington, D.C.

Birmingham, D., Cicerello, A., & Morgan, R. D. (1999). *Suicide assessment and prevention.* Workshop presented at the Kansas City Jail and Detention Center.

Birmingham, D., Morgan, R. D., & Cicerello, A. (1999). *Stress management for law enforcement officers.* Workshop presented to the Kansas City Police Academy.

Ax, R. K., & Morgan, R. D. (1999, August). *Predoctoral internships in correctional settings.* Paper presented at the annual meeting of the American Psychological Association, Boston, MA.

Morgan, R. D., Winterowd, C. L., & Fuqua, D. R. (1999, August). *The efficacy of a group psychotherapy program for male inmates.* Poster session presented at the annual meeting of the American Psychological Association, Boston, MA.

Van Haveren, R., Morgan, R. D., & Pearson, C. (1999, August). *Correctional officer burnout: Further analyses.* Poster session presented at the annual meeting of the American Psychological Association, Boston, MA.

Ferrell, S. W., Morgan, R. D., & Winterowd, C. L., (1997, October). *Job satisfaction of mental health professionals in state correctional facilities.* Poster session presented at the annual meeting of the Rocky Mountain Educational Research Association, Stillwater, OK.

Morgan, R. D., Winterowd, C. L., & Ferrell, S. W. (1997, August). *A national survey of group psychotherapy services in correctional facilities.* Poster session presented at the annual meeting of the American Psychological Association, Chicago, IL.

Morgan, R. D. (1997, May). *Group psychotherapy in corrections: Past, present, and future considerations.* Paper presented at the annual meeting of the Mental Health in Corrections Symposium, Kansas City, MO.

Morgan, R. D., Olson, K. R., Krueger, M. R., & Schellenberg, R. P. (1995, April). *Utility of DSM-III-R decision trees.* Poster session presented at the annual meeting of the Southwestern Psychological Association, San Antonio, TX.

Morgan, R. D. (1992, March). *Does the use of the DSM-III-R decision trees increase diagnostic accuracy?* Paper presented at the Great Plains Students Psychology Convention, Kearney, NE.

Morgan, R. D., & Rycek, R. F. (1991, April). *Differences in memory strategies of hospitalized and outpatient schizophrenics.* Paper presented at the annual meeting of the Rocky Mountain Psychological Association, Denver, CO.

Rycek, R. F., Ehrlich, R., & Morgan, R. D. (1991, April). *Differences between traditional and non-traditional students on Wason-type problems.* Paper presented at the annual meeting of the Rocky Mountain Psychological Association, Denver, CO.

**Workshops Presented**

Title: *Escaping the cage: A mental health treatment program for inmates detained in restricted housing*
One Day Training Workshop
Trainer: Robert D. Morgan
Sponsored by Maine Department of Corrections
November 17, 2014, Warren, Maine

Title: *Changing Lives and Changing Outcomes: A Treatment Program for Offenders with Mental Illness*
Two day Training Workshop
Trainers: Morgan, R. D. & Kroner, D. G.
Sponsored by Harris County Community Supervision & Corrections Department
April 2014, Houston, Texas

Title: *Changing Lives and Changing Outcomes: A Treatment Program for Offenders with Mental Illness*
One day Training Workshop
Trainer: Morgan, R. D.
Sponsored by Maine Department of Corrections
February 2014, Warren, Maine

Title: *Risk, needs, and responsivity principles with offenders with mental illness*
One day Continuing Education Workshop
Trainer: Morgan, R. D.
Sponsored by Institute of Law, Psychiatry & Public Policy (University of Virginia)
January 2014, Charlottesville, Virginia

Title: *Changing Lives and Changing Outcomes: A Treatment Program for Offenders with Mental Illness*
Two day Training Workshop
Trainers: Morgan, R. D. & Kroner, D. G.
Sponsored by Forensic and Mental Health Services, Inc
September 2013, Cincinnati, Ohio

Title: *Treating persons with mental illness who are justice involved: A guide to practice*
One-half day Training Workshop
Trainer: Morgan, R. D.
Sponsored by StarCare Specialty Health System
August 2012, Lubbock, Texas

Title: *Treating Offenders with Mental Illness: An Evidenced-Based Approach*
One and one-half hour Continuing Education Workshop
Trainers: Morgan, R. D. & Kroner, D. G.
Sponsored by the 5th Academic & Health Policy Conference on Correctional Health

March 2012, Atlanta Georgia

Title: *Treating the Mentally Disordered Offender: A Model and Guide for Practice*
One day Continuing Education Workshop
Trainer: Morgan, R. D.
Sponsored by the Texas Forensic Mental Health Conference
October 2011, Vernon, Texas

Title: *Treating Offenders with Mental Illness: Toward an Evidenced-Based Approach*
One- day Pre-conference Workshop
Trainers: Morgan, R. D., Kroner, D. G., & Mills, J. F.
Sponsored by American Psychology-Law Society (Division 41; APA)
March 2011, Miami, Florida

Title: *Treating Mentally Disordered Offenders*
One-half day Pre-conference Workshop
Trainers: Morgan, R. D., Kroner, D. G., & Mills, J. F.
Sponsored by Mental Health in Corrections Consortium
April 2008, Kansas City, Missouri

Title: Texas *Criminal Procedure & Offenders with Mental Impairments: A Refresher*
One-half day Continuing Education Workshop
Trainers: Shannon, B., Gerlach, M., & Morgan, R. D.
Sponsored by the Texas Tech University Law School
December 2007, Lubbock, Texas

Title: *Assessing Criminal and Violence Risk: Theory, Ethics, and Application*
One-day Pre-conference Workshop
Trainers: Kroner, D. G., Morgan, R. D., & Mills, J. F.,
Sponsored by the North American Correctional and Criminal Justice Psychology Conference
June 2007, Ottawa, Canada

Title: *Assessing Criminal and Violence Risk: Theory, Ethics, and Application*
One-day Pre-conference Workshop
Trainers: Mills, J. F., Kroner, D. G., & Morgan, R. D.
Sponsored by Mental Health in Corrections Consortium
April 2007, Kansas City, Missouri

Title: *Assessing Criminal and Violence Risk: Theory, Ethics, and Application*
One-day Continuing Education Workshop
Trainers: Mills, J. F., Kroner, D. G., & Morgan, R. D.
Sponsored by the American Psychological Association
August 2006, New Orleans, Louisiana
Title: *Assessing Criminal and Violence Risk: Theory, Ethics, and Application*
One-day Continuing Education Workshop

Trainers: Mills, J. F., Kroner, D. G., & Morgan, R. D.
Sponsored by the Canadian Psychological Association
June 2006, Calgary, Alberta

Title: *Assessing Criminal and Violence Risk: Theory, Ethics, and Application*
One-day Pre-conference Workshop
Trainers: Mills, J. F., Kroner, D. G., & Morgan, R. D.
Sponsored by Mental Health in Corrections Consortium
May 2006, Kansas City, Missouri

## Invited Addresses

Morgan, R. D. (April, 2014). Evidenced based correctional practice for managing and treating offenders with mental illness. Southern Illinois University, Carbondale, IL.

Morgan, R. D. (November, 2012). Treating justice involved persons with mental illness: An evidenced-based approach. Keynote address presented at the Ohio Department of Mental Health and the Northeast Ohio Medical University Forensic Focus Conference, Columbus, Ohio.

Lim, E. & Morgan, R. D. (April 2012). Insanity & other mental issues. Invited presentation at the Capital Trial Persecution for Texas district attorney's, Austin, Texas.

Morgan, R. D. (August 2010). *If not us, then whom?* Presidential address (Division 18) presented at the annual convention of the American Psychological Association, San Diego, California.

Morgan, R. D. (2010, April). Representing offenders with mental illness. Lubbock Special Needs Defenders Office. Invited presentation at a meeting of the Lubbock County Defense Association, Lubbock, Texas (1 hour CLE approved by the State Bar of Texas).

Morgan, R. D. & Gerlach, M. V. (2007, May). *Lubbock Regional MHMR Community Forensic Psychology Program.* Invited presentation at a meeting of the Lubbock County Defense Association, Lubbock, Texas.

Morgan, R. D. & Gerlach, M. V. (2007, March). *Lubbock Regional MHMR Community Forensic Psychology Program.* Invited presentation at the Texas Criminal Procedure & Offenders with Mental Impairments: CLE Training for Judges and Attorney's, Lubbock, Texas.

Morgan, R. D. (2006, June). *Treating Mentally Disordered Offenders: An Integrated Treatment Model.* Invited address at the 11th Biennial Symposium on Violence and Aggression, Saskatoon (Saskatchewan), Canada.

Morgan, R. D. (2006, May). *Ethics and Risk Assessment.* Invited address at the Northeastern Oklahoma Psychology Internship Program's Annual Conference, Tulsa, Oklahoma.

Morgan, R. D. (2003, December). *Forensic Psychology: Much More Than CSI and Silence of the Lambs.* Invited address at the annual Psychology Department Career Day, University of Nebraska at Kearney.

## EXTRAMURAL FUNDING

### Research Grants – Current/Pending

National Science Foundation
Title: Crime-related decision making: An experimental examination
Principal Investigator
Funding Dates: September 15, 2015 – September 14, 2017
Direct Costs: $225,781
Status: Under Review

American Association for Suicide Prevention
Title: Suicide Behind Bars: A Longitudinal Study of Suicide Risk and Staff Practices in Rural County Jails
Principal Investigator
Funding Dates: October 1, 2015 – September 30, 2017
Direct Costs: $89,379
Status: Under Review

### Research Grants - Completed

Texas Tech University School of Law
Title: Criminal Defendants' Perceptions of Working Alliance, Trust, Procedural Fairness, and Satisfaction in Attorney-Client Pretrial Consultations: A Comparison of Videoconferencing and Face-to-Face Modalities
Co-Investigator
Funding Dates: June 1, 2012 – July 31, 2014
Direct Costs: $70,000 (estimated)

Texas Department of Criminal Justice – Community Justice Assistance Division
Lubbock Specialty Courts: Who's in and are they working?
Co-Principal Investigator
Funding Dates: September 1, 2012 – May 31, 2014
Direct Costs: $80,000

Center for Behavioral Health Services & Criminal Justice Research
Sub-recipient: 1P30MH079920 (National Institute of Mental Health Award)
Criminal Thinking in a Community Mental Health Sample: Effects on Treatment Engagement and Psychiatric Recovery
Co-Principal Investigator

Funding Dates: August 1, 2011 – July 31, 2013
Direct Costs: $88,500

Center for Behavioral Health Services & Criminal Justice Research
Sub-recipient: 1P30MH079920 (National Institute of Mental Health Award)
Piloting Changing Lives and Changing Outcomes for Offenders with Mental Illness
Principal Investigator
Funding Dates: May 1, 2009 – July 31, 2011
Direct Costs: $56,162

National Institute of Justice
2007-IJ-CX-0027
Re-entry: Dynamic Risk Assessment
Principal Investigator
Funding Dates: October 1, 2007 – September 30, 2011
Direct Cost: $185,950

JEHT Foundation
Changing Lives and Changing Outcomes: A Bi-Adaptive Intervention for Offenders with
    Mental Illness
Principal Investigator
Funding Dates: July 1, 2009 – June 30, 2010
Direct Costs: $60,957
Status: Funding rescinded due to foundation collapse following 2009 financial crisis

National Institute of Mental Health
R34 MH070401-01A1
Tailoring Services for Mentally Ill Offenders
Principal Investigator
Funding Dates: September 23, 2005 – June 30, 2009
Direct Costs: $292,500

University of Minnesota Press
Elaborating on the construct validity of MMPI-2-RF scales in an acute forensic and nonforensic
    inpatient setting
Principal Investigator
Funding Dates: August 2007 – August 2008
Direct Cost: $19,396

Institute for Forensic Sciences; Texas Tech University Health Sciences Center
Sub-recipient: 2005-IJ-CX-K016(S-1) (National Institute of Justice Award)
Inmate Characteristics and Mental Health Services: A Model for Predicting Treatment Outcome
Principal Investigator
Direct Costs: $14,011

Texas Tech University Research Enhancement Fund (REF)
Inmate Perceptions of Mental Health Services
Principal Investigator
Funding Dates: September 2001 – August 2002
Direct Costs: $2,500

**Professional Service Grants – Current**

Forensic and Mental Health Services, Inc (Hamilton Ohio, Butler County)
Title: Evidence based practice integrated service interventions for the justice involved client
Co-Investigator (PI: Jenny O'Donnell, Psy.D.)
Funding Dates: July 1, 2013 – June 30, 2015
Direct Cost: $278,000.00

**Contracts – Current**

Texas Tech University/Dr. Morgan and Lubbock – Crosby County Community Supervision and
    Corrections Department
Contract for provision of substance abuse and mental health services to probationers
Director and Clinical Supervisor: Robert D. Morgan
Funding Dates: September 1, 2007 – May 31, 2014
Costs: $84,032/year ($588,223 total costs)

## TEACHING EXPERIENCE

### Graduate

Practicum in Intelligence Testing
Advanced Counseling Practicum
Psychology and Law
Thesis and Dissertation Supervision

### Undergraduate

Forensic Psychology
Abnormal Psychology
Introductory Psychology

## PROFESSIONAL EXPERIENCE & POSITIONS

2013-Present   Consultant, CorrectCare Solutions, Nashville, Tennessee

2013-Present   Consultant, State of California, Department of Justice

2011-2017    *Appointee* (Governor Perry), Advisory Committee to the Texas Board of Criminal Justice on Offenders with Medical or Mental Impairments

2007, 2011   Steering Committee, North American Correctional and Criminal Justice Psychology
2015         Conference

2007-2012    *Director of Forensic Services* and *Director of Postdoctoral Fellowship Program in Forensic Psychology*, Lubbock Regional Mental Health Mental Retardation Center. Center (Full Medical Staff Membership to Sunrise Canyon Hospital)

2001-Present *Independent Practice*, Specialty: Criminal Forensic Psychology, Lubbock, TX.

2008         *Consultant*, Justice Center: The Council of State Government. *Improving outcomes for people with mental illness under community supervision: A research guide for policymakers.*

2005         *Consultant*, BrianPower Inc. for the Dallas Cowboys at the National Football League Combine.

2002-2007    *Associate Clinical and Forensic Director*, Lubbock Regional Mental Health Mental Retardation Center (Full Medical Staff Membership to Sunrise Canyon Hospital).
2001-2003    *Mentee*, Mentoring and Education for Health Services Research Program, Yale University and National Institute of Mental Health (NIMH).

8/97-5/98    *Intake Counselor*, University Counseling Center, Oklahoma State University.

1997         *Consultant*, Oklahoma Department of Corrections.

1995-1997    *Psychologist in Training*, Edwin Fair Community Mental Health Center, Perry, OK and Jim Thorpe Rehabilitation Hospital, Oklahoma City, OK.

1993-1995    *Mental Health Professional*, El Dorado Correctional Facility and Winfield Correctional Facility, KS.

1992         *Psychology Internship*, Psychology Department, United States Penitentiary at Leavenworth, KS.

1991-1993    *Graduate Teaching Assistant*, Department of Psychology, Fort Hays State University, KS.

1991-1992    *Psychologist in Training*, Kelly Center, Fort Hays State University, KS.

## HONORS AND AWARDS

2014   Outstanding Researcher from College of Arts and Sciences, Texas Tech University
2007   Extramural Research Promotion Award, Texas Tech University
2007   Mary S. Cerney Student Award For Best Personality Assessment Research Paper (Jarrod S. Steffan, Robert D. Morgan, & Daryl G. Kroner)
2006   Outstanding Contribution to Science Award, Texas Psychological Association
2005   Extramural Research Promotion Award, Texas Tech University
2003   Early Career Achievement Award, Division 18, American Psychological Association


## ORGANIZATIONS AND ADDITIONAL PROFESSIONAL ACTIVITIES

### Memberships in Professional Associations and Licenses

American Psychological Association
    Fellow, Division 18, Psychologists in Public Service
    Member, Division 17, Society of Counseling Psychology
    Member, Division 18, Psychologists in Public Service
    Member, Division 41, American Psychology-Law Society

Canadian Psychological Association

Licensed Psychologist, State of Texas (#31546), 2001-present

### Editorial Responsibilities

*Editorial Board*

2005 – Present   *Criminal Justice and Behavior*
2002 – Present   *Psychological Services*

*Ad Hoc Reviewer*

Guilford Publishing House. *Assessment; Criminal Justice and Behavior; Journal of Clinical Psychology; Journal of Consulting and Clinical Psychology; Journal of Contemporary Psychotherapy; Journal of Counseling Psychology; Journal of Forensic Psychiatry and Psychology; Journal of Psychopathology and Behavioral Assessment; Professional Psychology: Research and Practice; Social Psychiatry and Psychiatric Epidemiology; The Counseling Psychologist.*

### Service Activities

*National Service*

2005-present   Member, American Psychology-Law Society Corrections Committee

| | |
|---|---|
| 2013 | *External Reviewer*, Promotion (Professor), Penn State Harrisburg |
| 2010 | *External Reviewer*, Promotion and Tenure, University of Saskatchewan (Canada) |
| 2008-2011 | *President-Elect, President, and Past-President*, Division 18, American Psychological Association |
| 2006-2007 and 2010-2011 | *Member*, Steering Committee, The North American Correctional and Criminal Justice Psychology Conference (NACCJPC) |
| 2006-2011 | *Member*, Mental Health in Corrections Consortium Advisory Board |
| 2005-2007 and 2008-2011 | *Member*, Executive Committee, Division 18, American Psychological Association |
| 2005-2007 | *Chair*, Criminal Justice Section, Division 18, American Psychological Association |
| 2004-2007 | *Member*, Division 17 Program Committee, American Psychological Association |
| 2004-2006 | *Administrator*, Criminal Justice Listserv, Division 18, American Psychological Association |
| 2004 | *Secretary-Treasurer*, Division 18, American Psychological Association (appointed by the division president to complete the term of the elected secretary-treasurer who was unable to complete the term due to illness) |
| 2004 | *Member*, Committee for Preparing Public Service Psychologists for Prescribing Psychotropic Medications, Division 18, American Psychological Association |
| 2004 | *Member*, Hospitality Suite Committee, Division 17, American Psychological Association |
| 2003-2005 | *Secretary*, Criminal Justice Section, Division 18, American Psychological Association |
| 2003 | *Member*, Program Committee (Student Proposals), Division 17, American Psychological Association |
| 2002–2004 | *Member-at-Large*, Section on Counseling and Psychotherapy Process and Outcome Research, Special Section of Division 17, American Psychological Association. |
| 2002-2003 | *Member*, Division 18 Program Committee, American Psychological Association |

1999–2000     *Member*, New Professionals Task Force, American Psychological Association

*University Service*

2013-present   Member, Faculty Senate, Texas Tech University

2010-present   Member, College of Arts & Sciences Awards Committee, Texas Tech University

2011-2012     Member, College of Arts & Sciences STEM Committee, Texas Tech University

2005-2006     Academic Advisor, Forensic Sciences Minor, Texas Tech University

2002          *Ad Hoc Reviewer*, Research Enhancement Fund (REF) proposals, Texas Tech University

2001–2004     *Member,* Advisory Group, The International Forensic Sciences Institute of the Texas Tech University System

2001–2003 and   *Faculty Mentor*, McNair Scholars Program, Texas Tech University
2004-2006

2001          *Graduate School Representative*, Doctoral Dissertation Defense, Department of Education, Texas Tech University

*Department Service*

2013          *Chair*, Counseling Psychology Search Committee, Texas Tech University

2011-2012     *Chair*, Research & Faculty Development Committee, Texas Tech University
2013-present

2007-2011     *Member*, Research Committee, Texas Tech University

2007- 2012    *Coordinator*, Counseling Psychology Internship Applications, Texas Tech
2002-2004     University

2009          *Member*, Student Misconduct Committee, Texas Tech University

2004          *Member*, Merit Raise Committee, Texas Tech University

2003-2007     *Member*, Executive Committee, Texas Tech University

2003-2004     *Member*, Clinical Psychology Search Committee, Texas Tech University

2002-2004      *Chair*, Counseling Psychology Program Admissions Committee, Texas Tech University

2002–2003      *Member*, Human Factors Search Committee, Texas Tech University

2001–2003      *Member*, Graduate Programs Committee, Texas Tech University

2002           *Judge*, First Annual Research Methods Poster Competition, Texas Tech University


This vita is accurate as of this date: February 1, 2015.

# Appendix B

NO. 2015-820,779

| THE STATE OF TEXAS | § | BEFORE THE JUSTICE OF THE PEACE |
| | § | |
| vs. | § | PRECINCT ONE OF |
| | § | |
| JUSTIN CHISUM | § | LUBBOCK COUNTY, TEXAS |

## ORDER FOR EXAMINATION REGARDING INCOMPETENCY

On March 11, 2015, the Court considered the suggestion of incompetency to stand trial in this cause with respect to Justin Chisum, Defendant. The Court is of the opinion that there is evidence to support a finding of incompetency and that Defendant should be examined as provided by Article 46B.021 of the Texas Code of Criminal Procedure.

It is, therefore, ORDERED that Dr. Robert Morgan, shall examine Justin Chisum to determine if Justin Chisum is incompetent to stand trial in this cause pursuant to Article 46B.021(f) of the Texas Code of Criminal Procedure.

Justin Chisum is ORDERED to submit to the examination by Dr. Robert Morgan as directed by Dr. Morgan. It is further ORDERED that a written report of the examination as described below be submitted to the Court not later than thirty (30) days of the date of this Order.

Said written report shall state the expert's opinion on defendant's competency or incompetency to stand trial or explain why the expert is unable to state such an opinion and shall also: (a) identify and address specific issues referred to the expert for evaluation, (b) document that the expert explained to the defendant the purpose of the evaluation, the persons to whom a report on the evaluation is provided, and the limits on rules of confidentiality applying to the relationship between the expert and the defendant, (c) include a description of the procedures used in the examination, (d) state the examiner's observations, findings, and opinions pertaining to the Defendant's competency to stand trial, and (e) any recommended treatment.

Furthermore, if the examiner concludes that Defendant is incompetent to stand trial, the report shall include:

(1) the exact nature of the deficits resulting from the defendant's mental illness or mental

retardation, if any, that impact the factors listed in Article 46B.024, contributing to the defendant's incompetency; and

(2) prospective treatment options, if any, appropriate for the defendant.

It is further ORDERED that the expert's report may not state the expert's opinion on the defendant's sanity at the time of the alleged offense, if in the opinion of the expert the defendant is incompetent to proceed.

It is further ORDERED that the expert provide the expert's report to the Court and the appropriate parties in the form provided by the Texas Correctional Office on Offenders with Medical or Mental Impairments under Section 614.0032(b) of the Health and Safety Code.

Signed on March 11, 2015.

_____
JUDGE PRESIDING

# Appendix C

## AFFIDAVIT OF ROBERT MORGAN, Ph.D.

THE STATE OF TEXAS      §
                              §

COUNTY OF LUBBOCK      §

        BEFORE ME, THE UNDERSIGNED AUTHORITY appeared Robert Morgan, Ph.D. who, after being duly sworn did depose as follows:

1.       My name is Robert Morgan. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2.       I am a psychologist licensed by the State of Texas. I have specialized in the field of forensic psychology for over fifteen years. I have personally conducted over six hundred competency examinations in the State of Texas and nationally during the course of my career.

3.       I was appointed to conduct a competency evaluation of Justin Chisum on March 11, 2015. I examined Mr. Chisum for approximately two hours on March 23, 2015. While my report is not yet complete, I am able to determine based upon my examination and the collateral information that I have reviewed that Mr. Chisum is not currently competent to proceed in the defense of his case. I do not believe that he has the sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings.

4.       It will be my recommendation that Mr. Chisum be transported to North Texas State Hospital at Vernon, Texas to attempt competency restoration before any further proceedings take place in his case.

FURTHER AFFIANT SAYETH NAUGHT.

Robert Morgan, Ph.D.
April 8, 2015

SWORN TO AND SUBSCRIBED before me on April 8, 2015 by Robert Morgan, Ph.D.

MARGARET RODRIGUEZ
MY COMMISSION EXPIRES
April 8, 2016

Notary Public

# Appendix D

No. 2015-820,779

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | BEFORE THE JUSTICE OF THE PEACE |
| | § | |
| VS. | § | PRECINCT NUMBER ONE OF |
| | § | |
| JUSTIN CHISUM | § | LUBBOCK COUNTY, TEXAS |

FILED 2015 APR 13 AM 10:07 JUSTICE OF PEACE 1 LUBBOCK COUNTY

### DEFENDANT JUSTIN CHISUM'S
### MOTION TO STAY GRAND JURY PROCEEDINGS

Comes now defendant Justin Chisum and moves the Court stay all proceedings in this cause including but not limited to proceedings of the Grand Jury as it relates to this case. *See* TEX. CRIM. PROC. CODE ANN. art. 46B.004(d). In support of this Motion, Mr. Chisum shows the following:

1.      Mr. Chisum is charged with the February 1, 2015, murder of his four year old daughter, Kylie Forrest. It was immediately apparent to counsel, jailers, and jail medical and psychiatric staff that Mr. Chisum suffered from serious mental health issues which may have played a primary role in the commission of the alleged offense.

2.      On March 6, 2015, the County Court at Law Number One of Lubbock County, Texas entered an Order in Cause No. 2015-785,001 finding Justin Chisum to be an incapacitated person in need of a temporary guardianship of both his person as well as his estate. Justin Chisum's father, Michael Chisum, was appointed as emergency temporary guardian by that Court.

3.      On March 11, 2015, Mr. Chisum's trial team filed a suggestion of incompetency noting several expert opinions and a lay opinion that Mr. Chisum suffered from a severe mental illness interfering with his ability to communicate with his attorneys and his ability to comprehend the severity of his charges. One expert opined that Mr. Chisum was "[N]ot likely to recover without long-term hospitalization and intensive inpatient medication management."

4.      In spite of the foregoing evidence of Mr. Chisum's incapacity, the Lubbock County District Attorney's Office has issued subpoenas to compel the attendance of witnesses before the Grand Jury April 16, 2015. (See affidavit of Michael Chisum, Exhibit "A").

5.      The filing of the Order for Examination Regarding Incompetency requires the Court to stay "all proceedings" pursuant to 46B.004(d).  Accordingly, the District Attorney should be precluded from presenting any of the facts of Mr. Chisum's case to the Grand Jury or from seeking an indictment from the Grand Jury.

6.      The reasons for such a stay are manifold, however, the primary one is that no one knows whether Mr. Chisum will ever regain competency.  Until proceedings under Article 46B are complete, an indictment is premature.  Dr. Robert Morgan, the forensic psychologist appointed to evaluate Justin Chisum's competency, examined Mr. Chisum on March 23, 2015.  Dr. Morgan has indicated to counsel that he believes that Justin Chisum is presently incompetent to participate in the formulation of his defense.  (See Affidavit of Robert Morgan, Ph.D., attached as Exhibit "B"). Submission of a formal report to the Court remains pending at the present time.

### Request for Referral to a Court of Record

7.      The relief requested herein appears to be an issue of first impression in the Texas Courts. Because the matters raised herein necessarily implicate Justin Chisum's substantive constitutional and statutory rights under U.S. Const. amend. V, XIV; Tex. Const. art. I, §§ 10, 19, and TEX. CRIM. PROC. CODE ANN articles 1.05 and 46B.004(b), and because Movant further fully anticipates further future litigation on the issues raised in this motion, Movant request an order of referral to a District Court of competent jurisdiction within Lubbock County, Texas for the sole purpose of a hearing on the merits of this Motion  pursuant to Texas Code of Criminal Procedure, Article 2.09.

## Prayer

Wherefore, Justin Chisum prays the Court set this matter for hearing and, after hearing, enter an order staying all proceedings in this case that are unrelated to a determination of his competency, including but not limited to presentment of the case to the Grand Jury.

Respectfully submitted,

NICKY BOATWRIGHT, P.C.
1005 Broadway
Lubbock, TX 79401
Tel: (806) 747-8002
Fax: (806) 747-8110

THE LAW OFFICE OF ALLISON CLAYTON
P.O. Box 64752
Lubbock, Texas 79464-4752
Phone No.:(806) 773-6889
Fax No.:(888) 688-4515

THE LAW OFFICE OF TED HOGAN, P.C.
1112 Texas Avenue
Lubbock, Texas 79401
Tel:     (806)765-0447
Fax:    (806) 763-7925

By:_____
Ted Hogan
Texas Bar No. 00784284
Attorneys for Justin Chisum

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing motion was provided to Sunshine Stanek, Assistant District Attorney for Lubbock County by hand delivery on April 13, 2015.

_____
Ted Hogan

*Motion to Stay Grand Jury Proceedings*
*The State of Texas vs. Justin Chisum*

page 4 of 4

## AFFIDAVIT OF MICHAEL CHISUM

**THE STATE OF TEXAS**        §
                             §
**COUNTY OF DALLAS**          §

   BEFORE ME, THE UNDERSIGNED AUTHORITY appeared Michael Chisum who, after being duly sworn did depose as follows:

1.   My name is Michael Chisum. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2.   I am the father and legal guardian of Justin Chisum. On Friday, March 20, 2015 I traveled from Addison, Texas to the Lubbock County Detention Center to visit with Justin Chisum. I was met by two representatives from the Lubbock County District Attorney's Office who had apparently learned that I was scheduled to visit Justin that day. The representatives served me with a subpoena to appear to testify before the Grand Jury during the week of April 13, 2015. A true and correct copy of the subpoena is attached to this affidavit as "Exhibit A-1". I was informed by those same representatives that the charges pending against Justin were to be presented to the Grand Jury on Thursday, April 16, 2015.

3.   Justin Chisum has been extremely delusional since his arrest, and remains so as of today's date. He does not have the ability to rationally assist his attorneys in the defense of his case. He is unable to discuss critical facts with myself or his attorneys that may be helpful in the proper presentation of his case to the Grand Jury.

4.   It is my belief, based upon conversations with Justin and investigation of the facts by and through the defense team, that Justin has knowledge of critical facts that could be relevant to the Grand Jury investigation. He cannot present that knowledge in a coherent fashion at this time due to his mental state. Once Justin is indicted, the defense team will have lost the opportunity to present those facts to the Grand Jury.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael Chisum
March 10, 2015

SWORN TO AND SUBSCRIBED before me on March 10, 2015, by Michael Chisum.

Sherrie M. Chapa
_____
Notary Public

> SHERRIE M. CHAPA
> Notary Public, State of Texas
> My Commission Expires
> June 30, 2015

*Exhibit A*

## GRAND JURY SUBPOENA – TCP 24.01
## THE STATE OF TEXAS

TO THE SHERIFF OR ANY CONSTABLE OF LUBBOCK COUNTY OR TO ANY BAILIFF OF THE GRAND JURY OF SAID COUNTY, GREETINGS:

YOU ARE HEREBY COMMANDED TO SUMMON:

**Michael Chisum**
**14899 Towne Lake Circle**
**Addison, TX 75001**

To appear before the Grand Jury now in session at the Courthouse, in the town of Lubbock in said County, on the **Instanter** at Instanter, now in session then and there to testify as a witness before said Grand Jury, and there remain from day to day until discharged by due course of law.

**Please call the District Attorney's Office at 806-775-1179 and ask to speak to Kim Elliott when you receive this subpoena.**

**WHEREFORE, Shameka Howard, prays for subpoena to issue forthwith to compel attendance of the above named witness for the State in this cause, such subpoena to be made returnable the week of April 13th, 2015, at 0900 o'clock A.M.**

HEREIN FAIL NOT, but of this writ make due return, showing how you have executed the same.

Witness my signature, this March 11, 2015, at 11:57 AM.

Barbara Sucsy, District Clerk
P.O. Box 10536 (79408)
904 Broadway
Lubbock, TX 79401

By ___Christopher_____ Deputy
Christi Christopher

Exhibit A-1

## OFFICER'S RETURN

Came to hand on the _____ day of _____, 20___, at _____ O'clock ___.M., and executed in _____ County, Texas, by delivering to the within named Witness, in person, a true copy of this Subpoena, having first endorsed thereon the following time and places to wit:

NAME     DATE     TIME     PLACE

*OR NOT* EXECUTED TO WITNESS; The diligence used in finding said Witness, the cause of failing to execute this process and the information received as to the whereabouts of the said witness, being:

_____

_____

_____

_____

WITNESS FEE:    $_____

OTHER FEES:    $_____

TOTAL FEES:    $_____

_____
SHERIFF/CONSTABLE/OTHER

_____
COUNTY, TEXAS

_____
DEPUTY/CONSTABLE/OTHER

---

NO. Grand Jury

In the Matter of

VS.

Grand Jury Investigation

ISSUED March 11, 2015

BARBARA SUCSY, DISTRICT CLERK
137th District Court
LUBBOCK COUNTY, TEXAS

GRAND JURY

SUBPOENA

# AFFIDAVIT OF ROBERT MORGAN, Ph.D.

THE STATE OF TEXAS § 
§ 
COUNTY OF LUBBOCK § 

BEFORE ME, THE UNDERSIGNED AUTHORITY appeared Robert Morgan, Ph.D. who, after being duly sworn did depose as follows:

1. My name is Robert Morgan. I am over the age of eighteen and otherwise legally qualified to give this affidavit. I have personal knowledge of the facts alleged herein and they are true and correct.

2. I am a psychologist licensed by the State of Texas. I have specialized in the field of forensic psychology for over fifteen years. I have personally conducted over six hundred competency examinations in the State of Texas and nationally during the course of my career.

3. I was appointed to conduct a competency evaluation of Justin Chisum on March 11, 2015. I examined Mr. Chisum for approximately two hours on March 23, 2015. While my report is not yet complete, I am able to determine based upon my examination and the collateral information that I have reviewed that Mr. Chisum is not currently competent to proceed in the defense of his case. I do not believe that he has the sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, or a rational as well as factual understanding of the proceedings.

4. It will be my recommendation that Mr. Chisum be transported to North Texas State Hospital at Vernon, Texas to attempt competency restoration before any further proceedings take place in his case.

FURTHER AFFIANT SAYETH NAUGHT.

Robert Morgan, Ph.D.
April 8, 2015

SWORN TO AND SUBSCRIBED before me on April 8, 2015 by Robert Morgan, Ph.D.

MARGARET RODRIGUEZ
MY COMMISSION EXPIRES
April 8, 2016

Notary Public

Exhibit B

No. 2015 -820,779

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | BEFORE THE JUSTICE OF THE PEACE |
| | § | |
| vs. | § | PRECINCT NUMBER ONE OF |
| | § | |
| JUSTIN CHISUM | § | LUBBOCK COUNTY, TEXAS |

## ORDER OF REFERRAL

Justin Chisum's Motion to Stay Grand Jury Proceedings is hereby referred to the

_72nd_ District Court of Lubbock County, Texas for hearing on the merits so that a

record of the proceedings may be made.

SIGNED April 10, 2015.

_____
JUDGE PRESIDING

FILED
2015 APR 13 AM 8: 14
JUSTICE OF PEACE 1
LUBBOCK COUNTY

NO. 2015-820,779

| THE STATE OF TEXAS | § | BEFORE THE JUSTICE OF THE PEACE |
|---|---|---|
| vs. | § | PRECINCT NUMBER ONE OF |
| JUSTIN CHISUM | § | LUBBOCK COUNTY, TEXAS |

## ORDER SETTING HEARING

Justin Chisum's Motion to Stay Grand Jury Proceedings is set for hearing before the _72nd_ District Court of Lubbock County, Texas, on April _13_, 2015 at _1:30 PM_.

SIGNED on April _13_, 2015.

_____
JUDGE PRESIDING

FILED
2015 APR 13 AM 10: 15
JUSTICE OF PEACE-1
LUBBOCK COUNTY